# Exhibit A

DocuSign Envelope ID: 0D24EA536-E22C-4FC3-ABAF-E65ADB846830

Production Title:    Simple Man

Production ID:    00481947          Signatory ID:    00973958



SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS AGREEMENT FOR INDEPENDENT PRODUCERS OF THEATRICAL MOTION PICTURES

This letter agreement ("Agreement") is entered into between Screen Actors Guild-American Federation of Television and Radio Artists (hereinafter referred to as "SAG-AFTRA"), on one hand and  UFO PICTURES LLC                        (hereinafter referred to as the "Producer"), on the other hand. All terms of the Producer – Screen Actors Guild Codified Basic Agreement of 2014 as amended by the 2017 Memorandum of Agreement, (hereinafter collectively referred to as the "Basic Agreement") are incorporated into this Agreement by reference, except as modified herein. Producer acknowledges that it has received a copy of the Basic Agreement and is familiar with its terms and requirements.  By signing this Agreement, Producer agrees to accept, assume and be bound by all terms of the Basic Agreement as specifically modified herein for each theatrical motion picture produced by Producer during the term of the Basic Agreement (the "Picture"), including the trust agreements establishing the Producer-SAG-AFTRA Health Plan, the SAG-Producer Pension Plan ("SAG-AFTRA Trust Agreements) and (if applicable) the Producer-AFTRA Retirement Fund ("AFTRA Trust Agreement"). Producer irrevocably designates and appoints the Alliance of Motion Picture and Television Producers ("AMPTP") as its attorney-in-fact to select, remove, or substitute representatives or trustees under both the SAG-AFTRA Trust Agreements and the AFTRA Trust Agreement.

Producer shall give SAG-AFTRA at least fifteen (15) working days advance notice of the commencement of principal photography of each Picture.

If Producer is not also the Distributor of the Picture on free television, new media, or in supplemental markets, Producer shall obtain from each Distributor having such distribution rights a separate written agreement called the "Distributor's Assumption Agreement," in the form contained in the Basic Agreement, as modified herein, by which such Distributor agrees to assume applicable terms of the Basic Agreement in connection with the Picture and pay amounts required by the Basic Agreement by reason of the distribution of the Picture on free television, new media and in supplemental markets, when such sums become payable, and to obtain similar assumption from each transferee of Distributor's rights.  The Distributor's Assumption Agreement as set forth in the Basic Agreement will also include the following: "Distributor agrees to obtain from any party to whom Distributor transfers any of Distributor's right in the Picture a separate written agreement in this form."

SAG-AFTRA may, in its sole discretion, require financial assurances with respect to each Picture including, without limitation, a bond, cash deposit, collection account agreement, security agreement, and/or other forms of financial assurances ("Financial Assurances") deemed necessary by SAG-AFTRA for the protection of SAG-AFTRA-represented performers employed by Producer ("Performers").  Producer shall timely provide all Financial Assurances required by SAG-AFTRA prior to the start of principal photography of the Picture, unless SAG-AFTRA extends the time for delivery of such Financial Assurances.

The Producer's failure to fully and timely comply with SAG-AFTRA's request for Financial Assurances shall be a substantial breach of the Basic Agreement, and SAG-AFTRA shall have the right to withhold the services of Performers with respect to the Picture until SAG-AFTRA determines in its sole discretion that such requirements are fully satisfied.

SAG-AFTRA shall not be prevented from monitoring Producer's performance of its obligations under the Basic Agreement, including full access to sets at all times.  SAG-AFTRA's observation shall be done in such a manner as not to interfere with production.  In addition, upon SAG- AFTRA's request, Producer shall promptly provide to SAG-AFTRA copies of all Performers' employment contracts, and all documents relating to compensation payable to Performers in connection with the Picture.

If Producer materially breaches its obligations under the Basic Agreement to timely pay compensation owed to Performers, including all payments required under the Trust Agreements, SAG-AFTRA reserves the right, which it may exercise at any time upon written notice to the Producer, to withhold the services of its Performers except when a bona fide dispute exists as to whether Producer has made all payments as required under the Basic Agreement and Producer has placed the amount in controversy in escrow, in a manner acceptable to SAG-AFTRA, pending arbitration of the dispute in accordance with Section 9 of the Basic Agreement.

SAG-AFTRA and the AMPTP have agreed to meet from time to time during the term of the Basic Agreement to negotiate modifications which may be required with respect to any matters covered by the Basic Agreement. In the event an agreement is reached with respect to any such items, SAG-AFTRA shall give Producer notice of the terms thereof in writing. If, within twenty (20) days after the date of such notice, Producer fails to notify SAG-AFTRA in writing that it objects to such terms, and that it wishes to meet and confer with SAG-AFTRA for the purpose of negotiating different terms, the agreement reached between SAG-AFTRA and the AMPTP with respect to such items shall be binding upon the Producer.

All arbitrations shall be held in SAG-AFTRA's office in Los Angeles, unless the parties otherwise agree, except that they shall be held in SAG-AFTRA's New York office if the production was or is based in New York and a majority of the witnesses required for the hearing reside regularly in or around the New York area. If a dispute arises concerning the proper situs for the arbitration hearing(s), an arbitrator in Los Angeles shall determine that issue. The same arbitrator shall hear the merits of the matter, if he or she is available and determines that Los Angeles is the proper situs for the arbitration hearing(s). In addition to all other remedies available under the Basic Agreement, the arbitrator shall have the power and authority to issue injunctive relief with respect to any dispute arising under Section 43 of the Basic Agreement.

If Producer or any party assuming obligations under this Agreement fails or refuses to substantially comply with its obligations to report and pay compensation under Sections 5 and 5.2 of the Basic Agreement, SAG-AFTRA may, in any grievance and arbitration relating to such failure or refusal, elect to either (a) enforce the provisions thereof by ascertaining sums owed from license agreements, distributors' statements and other documents evidencing the revenue derived from the distribution or other exploitation of the Picture, or (b) request and obtain an award for payment of compensation due under the provisions of this Agreement as estimated by SAG-AFTRA in good faith. The arbitrator selected in accordance with the provisions of Section 9 of the Basic Agreement is expressly authorized to issue an award for residuals compensation based upon SAG-AFTRA's good faith estimate rendered in accordance with this paragraph.

This letter may only be executed by bona fide producers and employers of SAG-AFTRA represented performers. SAG-AFTRA reserves the right, which it may exercise at any time upon written notice to the Producer, to cancel unilaterally the Basic Agreement and to withhold the services of its members should it determine in its sole discretion that Producer is not a bona fide producer and employer of SAG-AFTRA represented performers. The Producer's failure to submit any dispute under or disagreement over this provision to arbitration under Section 9 of the Basic Agreement constitutes a full and final waiver of the right to dispute the SAG-AFTRA's exercise of its right to cancel the Basic Agreement.

All notices required or permitted under the Basic Agreement or this Agreement shall be in writing and must be given by (a) personal delivery, (b) certified mail, return receipt requested, (c) first class mail, or (d) telecopy with a copy sent by first class mail addressed to the receiving party at its address as specified in this Agreement, and in the case of notices sent to SAG-AFTRA, the notice must also include "Attention: General Counsel." Any such notice shall be deemed to have been duly given or made either immediately upon personal delivery or five (5) calendar days from the date of mailing across national borders. Notices sent to Producer at the address given below (or to such other address as Producer may specify in accordance with this paragraph) shall be deemed effective and adequate under this Agreement and applicable law. Either party may change its address in accordance with the procedure set forth in this paragraph.

Producer shall clearly and distinctly display the SAG-AFTRA insignia on each Picture that carries a credit title or titles. The SAG-AFTRA insignia must only appear in a horizontal position and not be smaller in height than one-fifteenth (1/15) of the vertical title card or frame used to produce the title. SAG-AFTRA is the sole owner of the SAG-AFTRA insignia and its display must always be in accordance with the

specifications in this paragraph and accompanied by the registered copyright symbol.  It must be used as provided by SAG-AFTRA with no changes including changes in color, proportion, or design.  Any use that falls outside of these specifications is strictly prohibited.

This Agreement reflects the complete understanding reached between the parties in connection with the subject matter addressed and supersedes any oral understanding or agreement regarding all such matters.

If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, illegal or unenforceable, the remaining provisions of this Agreement shall remain in full force and effect.

ACCEPTED AND AGREED:                        SAG-AFTRA

UFO PICTURES LLC                            By: _Joshua Vasquez_____
_____                A92923C9FB32461...
(Company)

By: _Micah E. Brandt_____           Date: _March 19, 2019_____
       190EDD69984344B...
(Signature)

Micah E. Brandt        Producer/Manager
_____
(Print Name and Title)

132 S. Adams St. #204
_____
(Address)

Glendale, CA 91205
_____

323-379-6000
_____
(Telephone)

ufopictures@gmail.com
_____
(Email)

Date: _February 27, 2019_____

# Exhibit B

Production ID: 00481947
Signatory ID: 00973958



**SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS AGREEMENT FOR ULTRA LOW BUDGET THEATRICAL MOTION PICTURES**

UFO PICTURES LLC
_____(hereinafter the "Producer") represents to

(insert production company name)

Screen Actors Guild-American Federation of Television and Radio Artists (hereinafter "SAG-AFTRA") that the Producer intends to produce a single motion picture of approximately ___100___ minutes running time currently entitled "Simple Man                                                                          "
(hereinafter the "Picture").   Producer has further advised SAG-AFTRA that the Picture has a budget of approximately   $_175,000_____   (excluding deferred amounts) and   approximately $_175,000_____   (including deferred amounts) and that the intended exhibition of the Picture is limited to the areas described in paragraph 4 below.

Based upon these representations and in reliance thereon, SAG-AFTRA offers Producer the following special terms   and   conditions for   the   employment of   professional performers (hereinafter the "Agreement"):

1.    **Pictures Covered**

This Letter Agreement for Ultra Low-Budget Theatrical Motion Pictures ("Agreement") applies solely to independently conceived and financed live action motion pictures produced entirely in the United States.  It is not intended for pictures produced for television broadcast, cable use, video/DVD markets, new media or otherwise produced primarily for commercial exploitation. Animated projects, commercials and music videos are also specifically excluded from this Agreement.  The determination of whether a specific motion picture qualifies for this Agreement is subject solely to SAG-AFTRA's discretion.

2.    **Budget**

The budget for the Picture must not exceed $250,000 (excluding deferrals).  The budget figures include any payment required during production but exclude deferrals and participation.  Producer must submit a fully detailed production budget, shooting schedule and shooting script to SAG-AFTRA prior to commencement of principal photography in order to permit verification.

NOTE: In no event must the budget including deferrals exceed $625,000.  All deferrals must be reported to SAG-AFTRA with the budget figures.

Within four (4) weeks of completion of principal photography, Producer must submit to SAG-AFTRA a detailed report of actual expenditures and other relevant materials SAG-AFTRA may require showing actual cost of the Picture to date.  In the event the actual production costs exceed the limits stated above, Producer must pay to professional performers or to SAG-AFTRA for the benefit of the professional performers, any additional sums necessary to bring the compensation of the professional performers into full and complete compliance with the minimum rates, terms and conditions specified in the then-current SAG-AFTRA Letter Agreement for Modified Low-Budget or Low Budget Theatrical Motion Pictures as applicable, provided, however, that if the actual costs of Picture exceed the budget limit for such

DocuSign Envelope ID: ED2D44CF94FD0D63485D73BAECC68D08D4

agreements, the minimum rates, terms and conditions specified in the then-current SAG-AFTRA Agreement for Independent Producers of Theatrical Motion Pictures (hereinafter "Basic Agreement") apply. SAG-AFTRA Health and SAG-Producers Pension Plan contributions must also be paid on any such additional amounts.

Producer must also submit to SAG-AFTRA a copy of the final version of the Picture in VHS or DVD format. SAG-AFTRA agrees that it will not copy, display or publicly distribute such copy of the Picture without prior consent of Producer.

3.    **Acceptance as Signatory Producer**

Concurrently with the signing of this Agreement and as a condition thereto, Producer must sign the current SAG-AFTRA Agreement for Independent Producers of Theatrical Motion Pictures ("Basic Agreement"), all the terms of which apply as described above except as hereby modified.

4.    **Exhibition Rights**

Producer has the right to exhibit the Picture theatrically. Should the initial release not be in the theatrical market, the picture will remain a "theatrical motion picture" for all purposes of the Basic Agreement, as modified herein, and will not be reclassified as a "Made for Pay" or "Free Television" motion picture. If the Picture is distributed outside of the theatrical market, residuals will be payable in accordance with General Provisions, Sections 5 and 5.2 and Sideletter 22 of the Basic Agreement.

5.    **Performers Covered**

The terms of this Agreement apply only to professional performers employed as principal performers, singers, dancers, stunt performers, stunt coordinators, body doubles, puppeteers, airplane and helicopter pilots, narrators and announcers. The terms of this Agreement do not apply to background actors or to non-professionals employed for training or experience. Accordingly, Producer is not required to give preference of employment to professional performers in casting roles for this Picture, nor will the Union Security provision of the Basic Agreement be applicable to the employment of non-professionals or qualify a non-professional for membership in SAG-AFTRA. In order to insure the safety of all cast, crew and production personnel, this exception does not apply to the category of "stunt coordinator".

6.    **Minimum Payments to Covered Performers**

The minimum rates for professional performers employed under this contract must be as follows:

All Performers except Stunt Coordinators            $125 per day

Stunt Coordinators rates for Daily, Weekly and "Flat Deal" Stunt Coordinators track the rates in Schedule K-I, K-II or K-III of the Basic Agreement that are current at the time of photography.

All payments must be made by check issued by a payroll house experienced in the entertainment industry, payable to the order of the individual performer entitled thereto and delivered to SAG-AFTRA on the Thursday following each payroll week.

Each check must be accompanied by a separate written statement indicating dates worked, overtime, adjustments, reimbursements, tax deductions and name and address of the performer's "employer of record". At the discretion of SAG-AFTRA, signed payroll sheets or slips and photocopies of checks sent to the Performers must be delivered instead.

**7.     Consecutive Employment/Availability**

Unless the performer is on an overnight location as defined in Section 10, Producer will not be required to pay professional performers for any days intervening between days on which the professional performer is booked. No professional performer may be required to "hold" any day available unless the professional performer is paid for such day.

Professional performers have the right to accept other professional employment during the course of production, however, the performer will attempt to provide thirty-six (36) hours notice of a conflicting professional engagement.

**8.     Length of Work Day, Meal Periods, Overtime**

The workday for professional performers will be eight (8) consecutive hours, exclusive of time for meal periods. The professional performer's first meal period must be called within six (6) hours from the time of reporting for work. Succeeding meal periods of the same professional performer will be called within six (6) hours after the end of the preceding meal period. Such meal periods must be at least thirty (30) minutes long, but not more than one (1) hour long and the professional performer may not be requested to or required to work during such meal periods. If these meal period rules are violated, the professional performer must receive $25 in liquidated damages for each half-hour of delay or fraction thereof.

If the professional performer is requested to or required to work beyond eight (8) consecutive hours, Producer must pay the professional performer for each 1/10 of an hour unit, or fraction thereof, an amount equal to time and one-half of the professional performer's pro rata payment for the day.

No work may be scheduled in excess of twelve (12) hours within any 24-hour period. The professional performer may consent to work more than twelve (12) hours in a work day, without SAG-AFTRA's consent, however, Producer must compensate the professional performer at a rate equal to two (2) times the professional performer's negotiated straight time rate or the day performer scale rate under the Letter Agreement for Modified Low-Budget Theatrical Pictures, which ever rate is higher, for any time worked in excess of twelve (12) hours in a day.

The professional performer must receive at least twelve (12) hours rest period between work days. If the rest period requirement is violated, the professional performer must be paid an additional day's pay. Further, the professional performer may refuse to report if given less than ten (10) hours rest period between work days.

**9.     Pension and Health Contributions**

Producer must make contributions to the SAG-AFTRA Health Plan and the SAG-Producers Pension Plan at the applicable percentage rate in the Basic Agreement (18.5% for pictures commencing principal photography on or after July 1, 2018) of the total compensation earned by all professional performers covered by this Agreement. Such contributions must be paid in

weekly installments accompanied by the appropriate Health and Pension Report and filed with the SAG-AFTRA Health and SAG Pension office.  Copies of the Pension and Health report filed with such contributions must be sent weekly to the SAG-AFTRA office where the Picture was signed.

10. **Travel**

   a.   The applicable travel provisions of the Basic Agreement are modified as follows:  A performer will be deemed to be on an "overnight location" when it is necessary for the performer to remain away from his/her residence overnight for one or more nights. (regardless of the location of the producer's base).

   b.   Whenever the performer is required to travel away from his/her principal place of residence for whatever purpose, compensation for time spent in travel must be paid by Producer in addition to transportation expenses and per diem.  Producer must furnish lodging and per diem to the performer until the performer is returned to the original place of departure.

   c.   Except as modified herein, when Producer is required to provide transportation for a Performer all applicable provisions of the Basic Agreement apply, except when air travel is required, Producer may travel a Performer in coach class on a commercial airline. Notwithstanding, if any member of the production staff is flown any class other than coach, all Performers must be flown in the same higher class.

11. **Record Keeping**

   Producer must maintain accurate time sheets and employment contracts for all professional performers covered by this Agreement.  Copies of all such records must be submitted to SAG-AFTRA on a weekly basis.

12. **Financial Security**

   For the protection of professional performers, Producer must post with SAG-AFTRA a security deposit in an amount acceptable to SAG-AFTRA.  Such deposit must be posted prior to the commencement of travel or rehearsals, if any, or of principal photography.

13. **Clips Available to Professional Performers**

   Producer must make available (at cost) clips of each professional performer's work in the Picture once principal photography is completed.  Such clips must be available in 16mm, 35mm or digital video, provided the professional performer bears the cost for required conversion from one medium to another.

14. **Withholding Taxes, Social Security, Unemployment and Disability Insurance**

   All compensation paid to professional performers under the terms of this Agreement constitutes wages and is subject to deductions for Income Taxes, Social Security and Disability Insurance. Producer must make the necessary payments, reports and withholding deductions with respect to such taxes and premiums. Producer must provide Unemployment Insurance coverage for professional performers by making appropriate registration and payments to the State.

15. **Security Interest in Picture**

SAG-AFTRA, at its sole discretion, may require Producer to execute documents necessary to grant SAG-AFTRA a first position security interest in the Picture and related rights to protect professional performers and SAG-AFTRA against any default in the performance of obligations under this Agreement.  Producer must provide SAG-AFTRA with all chain of title documents relating to the Picture.

**16.     Waiver of 6th Day, 7th Day and Holiday Premiums**

Producer may engage professional performers to perform on the 6th day, 7th day or holidays without payment of the premium rates described in the Basic Agreement.  Such work must be at the same rates as are applicable on normal workdays.

**17.     SAG-AFTRA Acknowledgement**

The end credits of the Picture must include the following:  "Special Thanks to SAG-AFTRA." Producer must also include the SAG-AFTRA logo or union bug in the credits of the Picture. Contact your Business Representative for artwork.

**18.     Application of Agreement**

This Agreement applies to the above-designated Picture only. It is understood that the special provisions applicable to Ultra Low-Budget pictures represented by this Agreement are experimental and designed to encourage the employment of Performers in such pictures under fair and equitable terms and conditions. If SAG-AFTRA determines at any time that the continuance of such policy is not in the best interests of Performers, the policy may be changed or terminated with respect to any future production of Ultra Low-Budget pictures.

**19.     Successors and Assigns**

This Agreement is binding upon and inures to the benefit of the parties hereto, their respective successors and assigns.

Agreed and Accepted:
SAG-AFTRA

By: _____*Joshua Vasquez*_____
        A92923C9FB32461...

Title: ____Manager - Entertainment Contracts____

Agreed and Accepted:

By: _____*Micah E. Brandt*_____
        190EDD69984344B...
Signature

Micah E. Brandt            PRODUCER
Print Name/Title

For: __UFO PICTURES LLC__
Production Company

Date: __March 12, 2019__

Exhibit C

representatives to execute any other agreement relating to confidentiality
as a condition of granting access to its business records.

The foregoing provisions of this Section shall not apply to
residuals audits conducted by the Union for which (1) the date of audit
entry is prior to July 1, 2014, and (2) there is a written confidentiality
agreement executed by the Producer, the Union and/or its auditors.

## 7.    THEATRICAL MOTION PICTURES, THE PRINCIPAL PHOTOGRAPHY OF WHICH COMMENCED PRIOR TO FEBRUARY 1, 1960

As to all theatrical motion pictures, the principal photography of
which commenced prior to February 1, 1960, the Union does not and
will not make any claim for compensation for the exhibition of such
motion pictures on television.

## 8.    ORIGINAL EMPLOYMENT - PAY TELEVISION, VIDEODISC/VIDEOCASSETTE MARKETS

The provisions applicable to the employment of performers on
entertainment programs of the type historically produced under the SAG
Agreement when produced primarily for the pay television and/or the
videodisc/videocassette markets appear in Section 78 of the
SAG-AFTRA Television Agreement.

## 9.    ARBITRATION

Disputes shall be arbitrable only as hereinafter in this Section set
forth.

A.    Disputes involving or relating to injunctive relief are not
arbitrable.

B.    Disputes involving or relating to the right of termination of a
performer's individual employment contract are not arbitrable (1) except
with respect to day performers, stunt performers, stunt coordinators,
airplane pilots, singers, dancers employed under Schedule J, puppeteers,
body doubles and freelance performers whose guaranteed compensation
is less than $100,000 per picture and $10,000 a week, and (2) except as
provided in subsection C.(4)(a) below.

C.    Individual Disputes between Performer and Producer

Subject to the provisions of subsections A. and B. above and subsection E. below, only the following disputes between a performer and Producer are arbitrable:

(1)    As to a day performer, stunt performer, stunt coordinator, airplane pilot, singer, dancer employed under Schedule J, puppeteer, body double or either a freelance performer or a multiple-picture performer whose guaranteed compensation is less than $100,000 per picture and $10,000 per week, the issue of whether a contract was entered into and any dispute involving the interpretation, performance, non-performance or an alleged breach of a term or condition of the performer's contract, including claims for compensation at scale or overscale, and all disputes arising under the applicable terms of the collective bargaining agreement relating to such performer;

(2)    As to a contract performer receiving a weekly rate of compensation up to and including $8,000 per week, any dispute arising under the applicable terms of the collective bargaining agreement relating to such performer and any dispute arising under the performer's individual employment contract concerning the payment of compensation at scale or overscale;

(3)    As to all performers not expressly covered in (1) and (2) above, and except as provided in paragraph (4)(a) of this subsection C., only disputes arising under the applicable terms of the collective bargaining agreement shall be arbitrable.  Except as provided in said paragraph (4)(a), disputes arising under the individual employment contract of such performers, including claims for compensation therein provided, shall not be arbitrable;

(4)    With respect to contract performers receiving $8,000 per week or less, multiple-picture performers guaranteed less than $100,000 per picture and $10,000 per week, and freelance performers guaranteed less than $100,000 for the picture and $10,000 per week, the following provisions shall apply when a dispute as to any such performer arising under his individual employment contract or the collective bargaining agreement involves both a claim of compensation and the issue of termination:

(a)    When the Producer claims to have terminated or seeks a termination of the performer's individual employment contract: (i) if the total amount of money claimed by the performer is under $250,000, the entire dispute shall be arbitrable, it being agreed that the performer's entire claim shall be presented in a single arbitration; (ii) if

- 53 -

the total amount of money claimed by the performer is $250,000 or over, the dispute shall not be arbitrable, in whole or in part.

(b)   When the performer claims to have terminated or seeks a termination of his individual employment contract, the dispute shall not be arbitrable, in whole or in part.

(c)   If either party claims to have terminated or seeks a termination of the performer's individual employment contract, such party shall so notify the other, in writing, at any time prior to the expiration of the ten (10) days following delivery of the written statement of grievance provided for in subsection E.(3) of this Section.

D.   <u>Disputes between Union and Producer</u>

(1)   Starting Date - Freelance Performers

Any dispute between the Union and any Producer with respect to the issuance of any waiver referred to in the provisions of Section 4.C. of Schedules B and C of this collective bargaining agreement shall be determined, at the request of either party, by arbitration.

(2)   "Phantom Stages"

The Union has heretofore, upon request, issued waivers permitting the giving of weather-permitting calls for work on certain stages, such as the so-called "Phantom Stage" at Universal City Studios where rain, wind or hail rendered sound recording unusable.  Similarly, waivers have been granted authorizing weather-permitting calls when caused by fog, wind, rain or hail on uncovered, tarpaulin-covered or open structures.  It is agreed that weather-permitting calls within the limits provided by the Agreement may be given to performers on such or similar stages and on open or uncovered structures when the making of usable sound track is rendered impossible because of rain, wind or hail, or when usable photography on an uncovered structure is rendered impossible by fog, wind, rain or hail.  Disputes which may arise hereunder are subject to arbitration.

(3)   All disputes between the Union and a Producer as to the interpretation of this collective bargaining agreement shall be arbitrable.

E.   Any dispute described in Section B. or C. above shall be arbitrable only if the amount in controversy on a per performer, per project, per dispute basis is $250,000 or less; if the amount in controversy on a per performer, per project, per dispute basis is more

than $250,000, the dispute shall not be arbitrable, in whole or in part. Any dispute described in Section D. above, other than a dispute over residuals, shall be arbitrable only if the amount in controversy is $250,000 or less; if the amount in controversy is more than $250,000, the dispute shall not be arbitrable, in whole or in part. There shall be no monetary limit on the amount in controversy in connection with disputes over residuals under Section D. above.

Any performer whose dispute involves an amount in controversy which exceeds the monetary limits set forth in Section B., C. or E. above may waive his/her claim to those amounts exceeding the limitations in order to make the claim subject to arbitration. If the performer does so waive the excess amount, arbitration shall be the exclusive remedy for such claim and the performer shall waive the right to commence court proceedings.

No performer shall be permitted to split a claim in order to come within the foregoing arbitration limits.

F.    Procedure

(1)    Whenever any dispute arises which is arbitrable under the provisions of this Agreement, a representative of the Union and a representative of the Producer involved shall meet within ten (10) days after a request is made for conciliation by either party and endeavor to conciliate such dispute.

The filing of a formal claim by the Union or the Producer shall be deemed an automatic request for conciliation.

Claims hereunder (other than residuals claims, claims concerning screen credit, and claims for upgrades of background actors) shall be filed not later than the later of: (i) six (6) months after the occurrence of the facts upon which the claim is based; or (ii) within six (6) months after the employee or the Union, or the Producer, as the case may be, has had a reasonable opportunity to become aware of the occurrence. Otherwise, such claims shall be deemed waived. The time period for filing claims shall be tolled while discussions to resolve the matter are taking place between the Producer and the performer's agent.

Claims concerning screen credit (Section 25) must be filed within one (1) year after the first theatrical release of a theatrical film or within one (1) year of the first television broadcast of a television film.

Residuals claims shall be filed not later than the later of:  (i) one (1) year after the occurrence of the facts upon which the claim is based; or (ii) within one (1) year after the employee or the Union, or the Producer, as the case may be, has had a reasonable opportunity to become aware of the occurrence.

Claims for the upgrade of background actors shall be filed not later than three (3) months after the occurrence of the facts on which the claim is based.

(2)     In the event Producer has authorized an employer association to represent Producer, Producer shall have the right to have a representative of the appropriate employer association present at such conciliation.

(3)     In the event of a failure to settle the dispute under the applicable procedure provided above, or if a party fails or refuses to meet after a request for conciliation, then, in either of such events, the Union or Producer shall deliver to the other a written demand for arbitration setting forth the material facts concerning the dispute.

The demand for arbitration shall be filed not later than one (1) year after the date of filing of the grievance.  A demand for arbitration may be filed prior to initiation or conclusion of the conciliation proceeding if it reasonably appears that the conciliation proceedings will not be concluded in sufficient time to permit the arbitration proceeding to be commenced in time.

The demand for arbitration shall be served upon the other party by first class mail addressed to the representative of the Union or the Producer designated to receive such service at such party's last-known address or by personal service within or without the state where the proceeding is to be held.  The other party may file a written reply within ten (10) days following the delivery of the demand for arbitration.

The arbitrator shall be selected within fifteen (15) days of the date the arbitration demand is served from a predetermined list of eleven (11) arbitrators mutually agreed upon by the Union and the AMPTP.  The Union and the AMPTP have agreed upon a panel of arbitrators for Los Angeles and a panel of arbitrators for New York.

The parties shall attempt to mutually agree upon an arbitrator to hear and determine the dispute.  If the parties cannot agree upon the arbitrator to be appointed, then each party shall have the right to alternately strike one name from the list until such time as one

arbitrator is left.  A coin toss shall determine the party who is to strike first.  The arbitrator who is left shall be appointed as the arbitrator in the proceedings.

In the event that the Producer fails to participate in the selection process and the Producer is a member of an employer association, the Union will contact the association, which will participate in the selection process of behalf of the Producer within ten (10) days of notification from the Union.  In those instances in which the employer association fails to select on behalf of the Producer or in which the Producer who is not a member of an employer association fails to participate in the selection process, the Union may unilaterally select the arbitrator from the panel.  The Producer shall unilaterally select the arbitrator from the panel if the Union fails to participate in the selection process.

The arbitration hearing will be commenced within sixty (60) days of the date that the arbitrator is selected.  The arbitration award will be issued within thirty (30) days of the date of submission.

All of the time periods herein may be extended in any particular case upon the written agreement of the parties.

Nothing herein contained shall be deemed to deprive any party of the right to assert at any time and in any proceeding, or otherwise, that the matter in question was not arbitrable hereunder.

(4)    All arbitrations hereunder, which are not instituted by Producer, shall be brought by and in the name of the SAG-AFTRA, whether such arbitration is on its own behalf or on behalf of a performer and, in the latter case, the Union may, but shall not be required to, represent the performer.  The Union may, however, in its discretion, permit a performer to bring an arbitration in the name of the performer. It shall, however, be solely within the discretion of the Union whether or not the claim of a performer shall be brought to arbitration.

(5)    The cost and expenses of the arbitrator shall be shared equally by the Union and the Producer involved.

(6)    The arbitrator's decision and award shall be in writing and shall be final and binding on the Producer, the Union, the performer or performers involved and, when applicable, the performer's loan-out company.

(7)    The arbitrator shall only have authority to determine the dispute presented by the written demand for arbitration, and then only to

the extent and in the manner as expressly provided by the applicable provisions of this collective bargaining agreement, as limited by the provisions of this Section 9. The arbitrator shall have no power or authority to make a finding or an award relating to the termination or right of termination of an individual employment contract of a performer, except as otherwise expressly provided in this Section 9. Nor shall the arbitrator have any power or authority to make a finding or award for or against injunctive relief. Nor shall the arbitrator have any power or authority to reform any contract involved in the arbitration.

(8)     Termination or expiration of this collective bargaining agreement shall not affect the application of the arbitration provisions of this Agreement to arbitrable disputes arising during the term of this Agreement.

G.     Recognizing that, in some cases, a dispute may involve one or more matters which are arbitrable hereunder, and one or more matters which are not arbitrable hereunder, it is agreed that no award in an arbitration hereunder shall affect, be used or be admissible in any other action or proceeding relating to matters which are not arbitrable hereunder; and no judgment or order in any other action or proceeding shall affect, be used or be admissible in any arbitration hereunder, but it is expressly agreed that an arbitration award made in accordance with the provisions of this Section 9 shall not be affected by any court action or proceeding; but nothing herein shall preclude any court of competent jurisdiction from confirming, setting aside, or modifying any arbitration award hereunder, in any proceeding brought for any such purpose, in accordance with applicable law.

H.     In no case may any arbitration hereunder or any award therein affect any rights of the Producer or performer in or to or with respect to the results and proceeds of the performer's services or in or to or with respect to the use of the performer's name, voice or likeness.

I.     All references in this Section to the termination of an individual employment contract shall include a termination of the performer's employment under such contract or with respect to one or more pictures thereunder.

## 10.   <u>NEWSREELS, TRAVELOGUES, NARRATIONS, ETC.</u>

Newsreels, travelogues, news and sports commentators, and persons rendering similar services in short subjects are exempt from the operation of this Agreement. However, narrators rendering services in travelogues and persons rendering similar services in short subjects shall be deemed within the coverage of this collective bargaining agreement.

(3)    in an "emergency" on location. "Emergency" is defined as a situation, on location, in which a member of the cast cannot perform because of unavailability for any reason.

C.    Violations of the foregoing shall require payment of liquidated damages, as follows:

| | |
|---|---|
| Day Performers: | $500.00 |
| Three-Day Performers: | $600.00 |
| Freelance Performers: | $800.00 |

## 31.    PRODUCTION TIME REPORTS, LATE PAYMENTS, OVERWITHHOLDING AND PAYROLL AND UNEMPLOYMENT INSURANCE INFORMATION

A.    Production Time Reports

(1)    It shall be the required custom and practice to proffer a production time report made out in ink to all performers at the end of each day, which report may include other performers in the cast (working that day), and which reflects time in and out, time of meal periods (including non-deductible breakfasts), and travel (including the total number of miles round trip for studio zone locations) for such performer.  Such report shall not be offered in blank.  The performer shall initial or sign such report.  A performer may object to the accuracy of the information contained in the report.  Signing or initialing of the report by the performer shall not constitute acceptance of the report, and the performer shall not be deemed to have waived any right to file a timely claim.

(2)    Producer shall deliver a copy of the report for the previous week to the Union no later than the end of the following week.

(3)    In the event there is a substantial breach of the foregoing requirements, liquidated damages in the amount of $275 shall be payable to the Union for each day of such substantial breach.  In the event there is a dispute as to whether or not a substantial breach has occurred, the dispute shall be referred to and determined by the Cooperative Committee.  In the event the Cooperative Committee cannot determine the dispute, the matter may be referred to arbitration.

(4)    With reference to stunt performers, the amount of stunt adjustment shall be noted on the production time report or time card and shall be initialed by the stunt performer and an authorized representative of the Producer.

B.   Late Payments

(1)   The time of payment for day performers shall be five (5) days, excluding Saturday, Sunday and holidays.  If the company is on location, checks mailed on the fifth day shall be deemed to constitute timely payment.  Time of payment for all other performers shall be as provided in this Agreement.

(2)   There shall be a $10 per day per performer late payment charge, excluding Saturdays, Sundays and holidays, for late payment applicable to all Schedules from the time payment becomes due (excluding *bona fide* emergencies of which the Union shall be given prompt notice within the time specified for payment hereunder), for a period not to exceed twenty (20) days, excluding Saturdays, Sundays and holidays, to a maximum of $200 per violation.

Upon receipt by Producer of a written notice by the Union or the performer that Producer is still delinquent, Producer shall have five (5) business days to issue the payment, including the late payment charges.

In the event payment is not made within said five (5) day period of the entire amount due, further late payment charges in the amount of $2.50 per day retroactive to the date of receipt of notice of non-payment shall be due and shall continue to accrue, without limitation, until the delinquent payment, together with late payment charges, is fully paid.

Such charges for late payment shall be in addition to all other remedies which the Union may have against Producer under the contract.

Late payment charges shall accrue commencing ten (10) business days after the settlement of a disputed claim.

No late payment shall be due to any performer who fails to provide the Producer with completed forms and documentation required for employment and/or payment (*i.e.,* I-9s, vouchers, W-4s, or start paperwork indicating the correct name, address, Social Security Number, or tax identification number (for loan-outs) of the performer), provided that the Producer supplies the forms to the performer and makes reasonable efforts to collect those forms by notifying the performer that the forms are incomplete or missing.

(3)    If there is a dispute over the amount due the performer, and Producer pays the undisputed amount on time, or if there is a *bona fide* dispute as to the Producer's liability therefor, there will be no late payment charge during the pendency of the dispute.

C.    <u>Overwithholding</u>

(1)    The "Part-Year Employment Method" of withholding, as currently set forth in Section 31.3402(h)(4)-1(c) of the Internal Revenue Code Regulations or any applicable successor regulations, shall be utilized for any performer upon request of the performer and the form of declaration for each such use shall be attached to the performer's employment contract.

(2)    The withholding of taxes on a weekly basis rather than on a daily basis for day performers, as then currently set forth in Internal Revenue Code Regulation Section 31.3402(c)-(1)(d)(2) or any applicable successor regulations, shall be utilized on the request of the day performer and the form of declaration for such use shall be attached to employment contracts of day performers.

(3)    The obligation of the Producer to permit the election of the foregoing alternative withholding formulae shall be effective during such time as the Internal Revenue Code Regulations permit such alternatives.

D.    <u>Payroll and Unemployment Insurance Information</u>

Upon request of a performer, Producer shall supply the following information, in writing, to the performer:

(1)    The name, address and state identification number of the employer of record; and

(2)    The state in which unemployment insurance is filed.

## 32.    <u>INDUSTRY ADVANCEMENT AND COOPERATIVE FUND</u>

The parties have agreed to establish an Industry Advancement and Cooperative Fund, the proceeds of which are earmarked for the administration of programs such as the following:  Seminars to enhance awareness of the casting and non-discrimination mandates contained in the Agreement, performers' safety, work in smoke, use of animals in motion pictures, providing showcases, proper screening procedures and verification of performers' eligibility to work in the United States. The

(f)    That a study be conducted of appropriate standards for dance floors and the method for implementing such industry standard; and

(g)    Examination of a method for reimbursing Producers for certain claims arising out of inadvertent omissions from final cast lists and other cast list adjustments occasioned by either the change in the rateable distribution formula for television motion pictures or by the change in the residual payment formula under Section 18.1 of the SAG-AFTRA Television Agreement; and

(h)    That the IACF and the AFTRA Industry Cooperative Fund ("AICF") be merged during the term of the 2014 SAG-AFTRA Codified Basic Agreement.  In the event that the Trustees of the IACF and the AICF approve a merger of the IACF and the AICF during the term of the 2014 SAG-AFTRA Codified Basic Agreement, Producers agree to make the required contributions to the successor Fund to the IACF and the AICF.  The parties shall consider reducing the overall number of Trustees in the event of a merged Fund.

## 33.   SUBCONTRACTING

Producer agrees that if Producer engages an independent contractor to photograph any footage to be used as part of a motion picture being produced hereunder by Producer, or to make still photographs or record sound tracks, then, with respect to such performers employed by such independent contractor whose employment would have been covered by the Basic Agreement had Producer employed them directly, Producer shall remain responsible under this Agreement for wages, hours and work standards provided hereunder.  This shall not apply to the acquisition by Producer of stock film footage.

## 34.   PENSION AND HEALTH PLANS

A.    The Producer-Screen Actors Guild Pension and Health Plans, established in 1960, shall be funded by contributions made by Producers under SAG-AFTRA collective bargaining agreements providing for such payments to the Plans.  With respect to employment covered hereunder on motion pictures, the principal photography of which commences on or after July 1, 2014, Producer shall pay to said Plans contributions in an amount equal to seventeen percent (17.0%) of all gross compensation, as and when paid by Producer to all employees covered hereunder.

The aforementioned seventeen percent (17.0%) shall be allocated seven and thirty-one hundredths percent (7.31%) of contributions to the Health Plan and nine and sixty-nine hundredths percent (9.69%) of contributions to the Pension Plan effective July 1,

2014.  The allocation of such seventeen percent (17.0%) contribution rate between the Health Plan and Pension Plan may be changed at any time during the term hereof by the Boards of Trustees of the Pension Plan and the Health Plan, based on actuarial studies.

 The term "gross compensation," as used in this subsection A., means all salaries and other compensation or remuneration, including compensation payable under Section 5 and 5.2 hereof, but only to the extent provided in said Sections, and excluding meal penalties, payments for rest period violations, traveling, lodging or living expenses, interest on delinquent payments, reimbursement for special hairdress or for wardrobe damage, but without any other deductions whatsoever.  Such term also includes amounts paid to an employee with respect to services as a performer (including compensation paid as salary settlements) whether or not any services were performed.

 However, and subject to the provisions of the next paragraph of this Section 34.A. relating to exclusivity monies, holding fees and option monies, with respect to motion pictures covered hereunder, when a performer is paid compensation at a rate in excess of $232,000 per picture, such percentage shall be paid on the first $232,000 only of such performer's compensation for such picture.  Subject to the foregoing sentence, the percentage to be paid shall apply to the performer's gross compensation without any deduction whatsoever.

 Amounts paid in consideration of exclusivity, for a "hold" on a performer and/or an option for acting services shall be subject to pension and health contributions up to a maximum of $40,000.  If all or a portion of the exclusivity/hold/option money is creditable against the fee due for acting services and the option is exercised, the amount so creditable shall be applied toward the $232,000 ceiling on contributions, computed as above provided.  If the exclusivity/hold/option money is not creditable against the fee due for acting services and the option is exercised, then up to one-half (½) of the exclusivity/ hold/option money, not to exceed $20,000, shall be applied against the pension and health contribution ceiling.  This paragraph shall apply to all claims for pension and health contributions on exclusivity/hold/option monies outstanding on July 1, 1995 and to exclusivity/hold/option agreements entered into after July 1, 1995.

 In addition to the foregoing money ceiling of $232,000, the following money ceilings for term contract performers shall be applicable to contributions to the Pension and Health Plans:

    (1)    Combination Term Contract

        With respect to compensation for services in television motion pictures under such a contract, the appropriate ceilings set forth in the applicable Producer – SAG-AFTRA Television Agreement shall apply.

    (2)    Theatrical Term Contract

        The $232,000 per picture ceiling referred to above with respect to the application of the pension and health contribution shall be computed as follows:

        If the performer's individual employment contract contains a restriction on the number of theatrical pictures he may do in the period to which the restriction applies, then his total compensation for such period divided by that number determines his gross compensation per picture.

        If there is no limitation on the number of pictures the performer may be required to do in the current contract term, then his total compensation for such term divided by the number of pictures in which he actually performed determines his gross compensation per picture.

        If, on the expiration of any contract term, the performer is engaged in performing services in a picture and the Producer does not extend such current contract term, but exercises an option for the succeeding term and completes the production of such picture during such succeeding term, then, for the purpose of computing gross compensation paid to the performer for such picture, all gross compensation paid to the performer during the period such services are rendered in the completion of such picture shall be deemed to have been paid the performer during such contract term, and such picture shall be deemed to have been completed during such current contract term.

        If the performer does not perform in any theatrical picture during any contract term, then there is no ceiling with respect to such contract term.

        In each instance in which a "contract term" is referred to in this subparagraph (2), the same shall be deemed to include all extensions thereof.

    B.    Each Plan shall be administered by thirty-six (36) Trustees, eighteen (18) appointed by the Alliance of Motion Picture and

Television Producers and ANA-AAAA Joint Policy Committee on Broadcast Talent Union Relations, in accordance with the allocation described below, and eighteen (18) appointed by the Union. The appointing authority shall also have the right at any time to remove any Trustee appointed by it and to substitute another Trustee.

The number of Trustees to be allocated to the respective employer associations shall be subject to review every three (3) years following the establishment of the Plans. At such times, the Trustees to be allocated to each employer association for the ensuing three (3) year period shall be determined in accordance with the proportion which the total cumulative contributions to the Plans for the preceding three (3) year period, made by the members of each such employer association, bear to the total contribution to the Plans made by members of all such employer associations during such period.

The references in this Section 34 to any employer association shall apply to any employer association which may be or become a successor thereto.

C.    The Pension and Health Plans shall be industry-wide and open to all Producers signatory to any of SAG-AFTRA's collective bargaining agreements which provide for payments to the Plans, as above set forth. By signing a letter of adherence to the Trust Agreement (hereinafter described), and upon acceptance by the Trustees, such other Producers shall be deemed to be parties to the Plans and to have appointed the Producers' Trustees previously appointed.

D.    The funds contributed under the Pension Plan (hereinafter referred to as the "Pension Plan") and the Health Plan (hereinafter referred to as the "Health Plan") shall each constitute a separate Trust Fund created by a Trust Agreement to be executed by the parties to this Basic Agreement and adopted by the Trustees. The Trust Fund for the Pension Plan shall be used solely for the purpose of providing pension benefits, and for expenses connected with the establishment and administration of the Plan. The Trust Fund for the Health Plan shall be used solely for the purpose of providing health benefits for employees covered by SAG-AFTRA's collective bargaining agreements in the motion picture industry, who are eligible for such benefits under the Plan and, in the discretion of the Trustees, for their families and for expenses connected with the establishment and administration of the Health Plan.

E.    The Trustees shall determine the form, nature and amount of pension and health benefits, respectively, the rules of eligibility for such benefits and the effective dates of such benefits. The health benefits may include, in the discretion of the Trustees, any one or more of the

following benefits: death, accidental death, injury, disability, hospitalization, surgical expense and medical expense, and any other benefits permitted by law.

F.     The Pension Plan and the Health Plan provided for herein, including the respective plans of benefits thereunder, shall be subject to the approval of the Internal Revenue Service as qualified Plans and as an appropriate business expense.  If any part of either Plan is not so approved by the Internal Revenue Service, such Plan shall be modified by the Trustees, to such form as is approved by the Internal Revenue Service.

G.     The Agreement and Declarations of Trust shall provide that no portion of the contributions thereunder may be paid or revert to any Producer.

H.     Each Producer shall furnish the Trustees, upon request, with the required information pertaining to the names, job classification, Social Security numbers and wage information for all persons covered by this Agreement, together with such information as may be reasonably required for the proper and efficient administration of the Pension and Health Plans.  Upon the written request of SAG-AFTRA to the Producer, such information shall be made available to SAG-AFTRA.

I.     These provisions for the Pension and Health Plans are in addition to, and not in substitution, in whole or in part, for any other existing pension and/or health plan covering any of the performers coming under this Agreement; and no performer shall lose, in whole or in part, any of his rights or privileges under such other pension and/or health plan by virtue of receiving or being entitled to receive benefits under the Pension and Health Plans.  No payments, rights or privileges available to a performer under the Pension and Health Plans may be credited to any payments, rights or privileges to which such performer may be entitled under any other pension and/or health plan, and vice versa.  However, the Health Plan may provide for a non-duplication of benefits with respect to persons coming under both this Health Plan and the AFTRA Health Plan.

J.     No part of the Producers' contributions to the Plans may be credited against the performer's overscale compensation or against any other remuneration that the performer may be entitled to, no matter what form such other remuneration may take, nor shall it be subject to any talent agency commissions or other deductions; nor shall such contributions constitute nor be deemed to be wages due to the individual employees subject to this Agreement, nor in any manner be liable for or subject to the debts, contracts, liabilities or torts of such employees.

K.    <u>Loan-outs</u>

The following shall apply with respect to the payment of pension and health contributions due when a Producer borrows the services of a performer from a loan-out company, as defined herein, and such performer is used by Producer within the jurisdiction of this Agreement.  For purposes of this provision, a loan-out company is defined as a company, whether or not signatory to this Agreement, which is controlled by the loaned-out performer who is performing work covered by this Agreement.

(1)    Pension and health contributions, subject to the ceilings, shall be based on the loan-out price for the performer's covered acting services.

(2)    When other than covered acting services are being provided by the loan-out company, Producer agrees to separately state the compensation for covered acting services.  If there is a dispute over the portion of the loan-out price allocated to the performer's acting services, the performer's "customary salary" shall be given substantial consideration in resolving such dispute.

(3)    Agreements with loan-out companies for covered services of the loaned-out performer shall provide that Producer shall make pension and health contributions directly to the Plans on behalf of the loan-out company.

L.    <u>Audits</u>

(1)    If, under the 1983 or any prior SAG Agreement, a loan-out company, as defined above, has failed to make the applicable pension and health contributions on behalf of the loaned-out performer pursuant to the provision corresponding to Section 36.K.(3)(b) of the 1986 SAG Agreement, Producer shall not be liable for such contributions if the loan-out company failed to pay such contributions more than four (4) years prior to the date of commencement of the audit that gives rise to the claim (whether or not it is of the loan-out company's records or the borrowing Producer's records).  The date of commencement of the audit shall be deemed to be the date of actual audit entry, but in no event later than ninety (90) days after the date of the Plans' notice of intent to audit.  The foregoing limitation shall apply to claims for contributions on behalf of loaned-out performers arising under the 1986 and 1989 Agreements, provided that the notice requirements set forth in Section 36.K.(3)(b) of the 1986 Agreement (or the corresponding provision of the 1989 Agreement) have been met.  In the event that the Plan(s) conclude, based on an audit of a loan-out

company's records, that there exists a claim for unpaid contributions, the Plan(s) or the Union must give the borrowing Producer written notification of any such claim for unpaid contributions at the time that the loan-out company is notified of such claim.  In no event will the borrowing Producer be liable for any such unpaid contributions which were due from the loan-out company more than four (4) years prior to the date that the borrowing Producer was notified of the loan-out company's failure to make the contribution.

     (2)   Claims against Producer pursuant to subsection K.(3) above for pension and health contributions on behalf of performers borrowed from a loan-out company, or claims against Producer on behalf of performers employed directly by the Producer, must be brought within four (4) years from the date of filing of the compensation remittance report covering such performers.

     (3)   Any claim for contributions not brought within the four (4) year periods referred to in subsections L.(1) and (2) above shall be barred.

   M.   <u>Adherence to Plans</u>

     By signing this Agreement, Producer thereby applies to become a party to and agrees to be bound by the Screen Actors Guild–Producers Pension Plan Trust Agreement and the Pension Plan adopted thereunder; and the Screen Actors Guild-Producers Health Plan Trust Agreement and the Health Plan adopted thereunder, if the Producer is not already a party to said Agreements and Plans.

     Producer further hereby accepts and agrees to be bound by all amendments and supplements heretofore and hereafter made to the foregoing Agreements and documents.

     Producer hereby accepts the Producer Plan Trustees under said Trust Agreements and their successors designated as provided therein.

   N.   <u>Crediting Residuals Earnings in Excess of Contractually-Established Ceilings</u>

     The parties jointly recommend that the Trustees of the Producers-Screen Actors Guild Pension and Health Plans take appropriate measures to address the problem of crediting residual earnings in excess of the contractually-established ceilings to performers who receive such earnings and who are not otherwise eligible for health coverage or pension vesting credit.

O.    Pension and Health Contributions for U.S. Performers
Engaged under ACTRA or UBCP Contracts

During the 1998 negotiations, the Producers agreed to
facilitate payment of pension and health contributions to the SAG plans
based on SAG contribution rates and ceilings when U.S. performers are
engaged under the Alliance of Canadian Cinema Radio and Television
Artists (ACTRA) and Union of British Columbia Performers (UBCP)
contracts.  Based upon the joint efforts of the Producers and SAG,
appropriate contract provisions to this effect have been added to the
ACTRA and UBCP contracts.

P.    Potential Merger of SAG Health Plan and AFTRA Health
Fund

(1)    During the 2014 negotiations, the parties discussed that
the Trustees of the SAG Health Plan and the AFTRA Health Fund are in
the process of studying a merger of the SAG Health Plan and the
AFTRA Health Fund.  For purposes of this provision, the reference to
"merger" of the health plans includes considerations of other
possibilities, including creating a new health plan and the complete or
partial termination of an existing health plan and the redirection of
contributions to the other existing health plan.  Should a vote of the
Trustees of the SAG Health Plan, in which all AMPTP-appointed
Trustees participated, result in the approval of the merger of the SAG
Health Plan and AFTRA Health Fund, the parties shall either eliminate
or modify Sections 34.B. and 34.D. of the General Provisions of the
Producer – SAG-AFTRA Codified Basic Agreement of 2014 (and the
identical provisions in Sections 22(d) and 22(f) of the 2014 SAG-
AFTRA Television Agreement) as necessary to effectuate the terms of
the merger.  If the parties agree that the Producer – SAG-AFTRA
Codified Basic Agreement of 2014 and/or the 2014 SAG-AFTRA
Television Agreement contain other provisions that would prevent the
effectuation of the merger, either party may, upon thirty (30) days'
written notice, re-open negotiations for the sole purpose of removing
such impediment from the Producer – SAG-AFTRA Codified Basic
Agreement of 2014 and/or the 2014 SAG-AFTRA Television
Agreement.

(2)    Successor Plan(s)

(a)    Producers that are required to make contributions
to the SAG Health Plan under the Producer – SAG-AFTRA Codified
Basic Agreement of 2014 or the 2014 SAG-AFTRA Television
Agreement agree to become parties to any successor entity of the SAG

Health Plan on the condition that all AMPTP-appointed Trustees participated in a vote of the Trustees of the SAG Health Plan which resulted in the approval of the merger of the SAG Health Plan and AFTRA Health Fund.

(b)    Producers that are required to make contributions to the AFTRA Health Fund under the 2014 SAG-AFTRA Television Agreement agree to become parties to any successor entity of the AFTRA Health Fund on the condition that all management-appointed Trustees participated in a vote of the Trustees of the AFTRA Health Fund which resulted in the approval of the merger of the SAG Health Plan and AFTRA Health Fund.

## 35.  <u>ADDITIONAL PROVISIONS</u>

A.  <u>Evasion</u>

It is the policy of the Producer not to intentionally evade the provisions of this Agreement by acquiring pictures produced in the United States and which are made under terms and conditions less favorable than those provided herein.

B.  <u>Overnight Locations</u>

(1)  Notification

Performers shall be notified by Producer at the time of engagement, to the extent such information is then known, whether the engagement requires overnight location work and, if so, the approximate time and duration of such location work.

(2)  *Per Diem*

All performers shall be entitled to a basic *per diem* allowance for meals on overnight locations, which shall be as follows:

| | |
|---|---|
| Breakfast | $12.00 |
| Lunch | 18.00 |
| Dinner | 30.00 |
| | |
| TOTAL: | $60.00 |

The foregoing *per diems* are minimums only and are subject to individual bargaining at not less than the indicated *per diem* rate.

# SCHEDULE A

# DAY PERFORMERS

## Table of Contents

**Section
Number**

1.  Day Performer – Definition
2.  Minimum Wage – Single Role
3.  Schedule A Included in Individual Contracts
4.  Engagement
5.  Recall for Next Day
6.  Consecutive Days of Employment
7.  Conversion to Weekly Basis
8.  Hours Per Day
9.  Overtime
10. Rest Period
11. Make-up, Hairdress, Wardrobe
12. Work Time – Definition and Exceptions
13. Meal Periods
14. Interviews
15. Auditions, Tests
16. Fittings, Wardrobe Tests, Make-up Tests
17. Story, Song and Production Conferences
18. Study of Lines or Script

**Section
Number**

19. Publicity Interviews
20. Publicity Stills
21. Rehearsal Time
22. Night Work
23. Work on Six or Seven Days in a Workweek; Saturday and Sunday Work
24. Work on Holidays; Work Before and After Holidays
25. Weather-Permitting Calls
26. Script Lines
27. Stunt Adjustment
28. Retakes, Added Scenes, Looping, Etc.
29. Overlapping Engagement
30. Pre-recordings
31. Pre-production Stills
32. Travel Time – Rules and Definitions
33. Right to Name or Character
34. Rate Not Specified
35. Time of Payment
36. Use of "Double"
37. Dialogue Replacement Work

# SCHEDULE A

## DAY PERFORMERS

**1.    DAY PERFORMER - DEFINITION**

A day performer is a performer employed by the day, other than a background actor, stunt performer, stunt coordinator, professional singer, dancer employed under Schedule J or airplane pilot.

**2.    MINIMUM WAGE - SINGLE ROLE**

The day performer rate provided herein shall cover only a single role in a specified picture.

The minimum wage for a day performer shall be $880.00 for the period July 1, 2014 through June 30, 2015; $906.00 for the period July 1, 2015 through June 30, 2016; and $933.00 for the period July 1, 2016 through June 30, 2017.

**3.    SCHEDULE A INCLUDED IN INDIVIDUAL CONTRACTS**

The conditions in this Schedule shall govern the employment of all day performers and shall become a part of the contract with the day performer.

**4.    ENGAGEMENT**

A.    A day performer shall be considered definitely engaged in any of the following events:

(1)    When the performer is given written notice of acceptance;

(2)    When a form contract signed by Producer is delivered to the performer or when an unsigned contract is delivered by Producer to performer and is executed by performer as so delivered and returned to Producer;

(3)    When a script is delivered to the performer by Producer; however, this does not include the delivery of a script for a

# Exhibit D


**SAG·AFTRA.**

June 10, 2020

<u>**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED & EMAIL**</u>

UFO Pictures LLC
c/o Micah E. Brandt
132 S. Adams St., Apt. 204
Glendale, CA 91205

Cinedigm Entertainment Corp.
Attn: Labor Relations
902 Broadway, 9th Floor
New York, NY 10010

BondIt LLC
1639 11th St., # 160
Santa Monica, CA 90404
info@bondit.us

BondIt LLC
c/o Matthew Helderman
Attn: Labor Relations
1639 11th St., # 250
Santa Monica, CA 90404

BondIt LLC
c/o Matthew Helderman
Attn: Labor Relations
130 Ocean Way
Santa Monica, CA 90402

UFO Pictures LLC
c/o Micah E. Brandt
6565 Americas Parkway NE, Suite 200 Albuquerque,
NM 87110
ufopictures@gmail.com

SMCA 12 LLC
c/o Lauren Woodward
5751 Lemona Ave.
Sherman Oaks, CA 91411
ldenormandie@statusmedia-ent.com

SMCA 12 LLC
c/o Timothy Woodward Jr.
1438 N. Gower St., Bldg. 38, Ste. 201
Los Angeles, CA 90026
timothy@statusmedia-ent.com

Charach Productions Inc
c/o Capital Administrations LLC
Attn: Randy Charach
1712 Pioneer Ave., Ste. 500
Cheyanne, WY 82001

Re:    "Simple Man" aka "Beyond the Law"
       SAG-AFTRA Case No. TM 14017

Dear Parties:

As this matter remains unresolved, a Statement of Claim and Demand for Arbitration is enclosed.

Please contact me within fifteen (15) days from the date of this letter so that we may resolve this dispute or select an arbitrator. If I do not hear from you, SAG-AFTRA will exercise its right under the applicable collective bargaining agreement to unilaterally select an arbitrator.

Also, please submit the following documents and information to SAG-AFTRA within fifteen (15) calendar days in accordance with your obligations under section 8(a)(5) of the National Labor Relations Act and sections 5 through 5.2 of the Producer-Screen Actors Guild Codified Basic Agreement ("CBA"):

A.     Copies of all licensors' and distributors' statements or other documents evidencing gross receipts derived from the exploitation of the above-referenced motion picture ("Picture");

B.    Copies of all contracts in which the right to distribute the Picture on free and pay television, "Supplemental Markets," as defined by section 5.2 of the CBA, and New Media, was assigned, transferred, leased, licensed, or sold; and

C.    Names, addresses, and telephone numbers of all persons and entities who have within their possession or control licensors' and distributors' statements, contracts, and any other books and records relating to the exploitation of the Picture on free or pay television, Supplemental Markets or in New Media.

Should you have any questions or concerns please do not hesitate to contact the undersigned.

Very truly yours,

Sonja Augustine
Counsel


Enclosure



1  Sonja Augustine (SBN 155955)
   Counsel
2  SAG-AFTRA
   5757 Wilshire Blvd., 7th Floor
3  Los Angeles, CA 90036-3600
   Telephone: (323) 634-8291
4  Facsimile: (323) 549-6624

5  Attorney for Claimant Screen Actors Guild-
   American Federation of Television and Radio
6  Artists

7

8                    BEFORE THE SOLE NEUTRAL ARBITRATOR

9

10  SCREEN ACTORS GUILD-AMERICAN      )   Case No.: TM 14017
    FEDERATION OF TELEVISION AND RADIO )
11  ARTISTS, a non-stock corporation, as successor- )
    in-interest to Screen Actors Guild, Inc., on behalf )   **STATEMENT OF CLAIM AND DEMAND**
12  of Affected Performers, and 20 Doe Performers, )   **FOR ARBITRATION**

13                    Claimant,                )

14  v.                                        )

15  UFO PICTURES LLC; SMCA 12 LLC;           )
    CHARACH PRODUCTIONS INC; BONDIT          )
16  LLC; and CINEDIGN ENTERTAINMENT          )
    CORP.,                                    )
17                                            )
                      Respondent.            )
18  _____ )
                                              )
19  Re: *"Simple Man" aka "Beyond the Law'*  )
                                              )
20

21          PLEASE TAKE NOTICE that Screen Actors Guild-American Federation of Television

22  and Radio Artists ("SAG-AFTRA"), submits the above referenced dispute to arbitration pursuant

23  to Section 9 of the 2005 Screen Actors Guild Codified Basic Agreement for Independent

24  Producers, as amended ("CBA"), against UFO PICTURES LLC, SMCA 12 LLC, CHARACH

25  PRODUCTIONS INC, BONDIT LLC, and CINEDIGN ENTERTAINMENT CORP.

26  ("Respondents"). The basis of the dispute, material facts, position of SAG-AFTRA, and relief

27  sought are set forth below under the heading "Arbitration Claim" and upon such further oral or

28
                                          1
                    STATEMENT OF CLAIM AND DEMAND FOR ARBITRATION

1  documentary evidence that may be presented at the arbitration.

2       Section 9 of the CBA states in pertinent part: "[t]he arbitrator shall be selected within

3  fifteen (15) days of the date the arbitration demand is served from a predetermined list of eleven

4  (11) arbitrators mutually agreed upon by the Guild and the Alliance of Motion Picture and

5  Television Producers."

6       The predetermined list of arbitrators currently consists of (in alphabetical order): Sara

7  Adler, Norman Brand, Mark Burstein, Douglas Collins, Joel Grossman, Fred Horowitz, Stuart

8  Mandel, Michael Rappaport, and Sol Rosenthal.

9       Section 9 of the CBA further states in part, "[t]he [Respondent] may file a written reply

10 within ten (10) days following the delivery of the demand for arbitration."

11      SAG-AFTRA requests that the arbitration be held at its office located at 5757 Wilshire

12 Boulevard in Los Angeles, California.

13                          **ARBITRATION CLAIM**

14                      **(Allegations Common to All Counts)**

15      1.   Respondents UFO PICTURES LLC, SMCA 12 LLC, CHARACH PRODUCTIONS

16 INC, and BONDIT LLC ("Producers") are signatory to, or otherwise bound by, the SAG-

17 AFTRA Agreement for Independent Producers of Theatrical Motion Pictures ("Theatrical

18 Adherence Letter"), signed on or about February 27, 2019, and the SAG-AFTRA Agreement for

19 Ultra Low Budget Theatrical Motion Pictures ("ULBA"), signed on or about March 12, 2019,

20 and both of which incorporate and modify the terms of the CBA.

21      2.   During the term of the CBA, Producers produced the motion picture entitled

22 *"Simple Man"* aka *"Beyond the Law"* (the "Picture") under the ULBA.

23      3.   Producers engaged and employed various performers ("Affected Performers") to

24 render services in connection with the Picture in accordance with the ULBA and the CBA.

25      4.   Based upon information and belief, SAG-AFTRA alleges that CINEDIGM

26 ENTERTAINMENT CORP. ("Distributor") received the right to distribute the Picture in one or

27 more domestic and/or foreign markets including, but not limited to, Worldwide Free and/or Pay

28                                    2
      ─────────────────────────────────────────
          STATEMENT OF CLAIM AND DEMAND FOR ARBITRATION

Television, Supplemental Markets, including but not limited to DVD/home video, and New

Media, and are therefore transferees of copyright ownership within the meaning of the Digital

Millennium Copyright Act ("DMCA"), 28 U.S.C., § 4001.

5.      Based upon information and belief, SAG-AFTRA alleges that Distributor had

actual or constructive knowledge that the Picture was subject to the terms of a collective

bargaining agreement; thus Distributor is deemed to have executed SAG-AFTRA's Distributor's

Assumption Agreement ("DAA") pursuant to 28 U.S.C., § 4001(a).  Distributor is therefore

jointly and severally liable with Producers for the deferred compensation ("residuals"), late

payment liquidated damages, and pension and health contributions that are due pursuant to the

CBA.

6.      The Digital Millennium Copyright Act provides the following:

> In the case of a transfer of copyright ownership under United States law in a motion picture (as the terms "transfer of copyright ownership" and "motion picture" are defined in section 101 of title 17) that is produced subject to one or more collective bargaining agreements negotiated under the laws of the United States, if the transfer is executed on or after the effective date of this chapter and is not limited to public performance rights, the transfer instrument shall be deemed to incorporate the assumption agreements applicable to the copyright ownership being transferred that are required by the applicable collective bargaining agreement, and the transferee shall be subject to the obligations under each such assumption agreement to make residual payments and provide related notices, accruing after the effective date of the transfer and applicable to the exploitation of the rights transferred, and any remedies under each such assumption agreement for breach of those obligations, as those obligations and remedies are set forth in the applicable collective bargaining agreement, if -- (A) the transferee knows or has reason to know at the time of the transfer that such collective bargaining agreement was or will be applicable to the motion picture.  (28 U.S.C., § 4001(a).)

7.      A "transfer of copyright ownership" is defined as "an assignment, mortgage,

exclusive license, or any other conveyance, alienation, or hypothecation of a copyright or of any

of the exclusive rights comprised in a copyright."  (17 U.S.C., § 101.).

8.      Based upon information and belief, SAG-AFTRA alleges that Respondents have

distributed the Picture, and by virtue thereof, residuals are due and owing in accordance with the CBA.

9.     SAG-AFTRA filed statements of claim and requests for conciliation ("Claims") per the terms of the applicable CBA requesting payment of initial compensation due, pension and health contributions, and late payment liquidated damages owed to the Affected Performers, as well as a reporting of distributor's gross receipts.  This demand for arbitration shall also constitute a Statement of Claim and Request for Conciliation.

10.     SAG-AFTRA requests arbitration of this dispute pursuant to Section 9 of the CBA because SAG-AFTRA has been unsuccessful in its efforts to reach a complete resolution with the Respondent.

## FIRST COUNT

### (Failure to Pay Initial Compensation)

11.     The ULBA waives and relaxes certain terms of the CBA for ultra-low budget films that are filmed entirely in the United States, including allowing the Producers to pay lower rates of compensation to Affected Performers, but provides that except as waived, the terms of the CBA continue to apply and Producers must concurrently agree to the terms of the CBA.

12.     Producers filmed the Picture outside the United States in Romania, in violation of the terms of the ULBA, thereby triggering the minimum payment terms and rates set forth in the CBA.

13.     Despite demands therefor, Respondents have not paid the additional sums necessary to bring each Affected Performer's rate of pay into compliance with the minimum rates specified in the Theatrical Adherence Letter and the CBA and has not made the appropriate adjustments to residuals.

## SECOND COUNT

### (Failure to Report and Pay Residuals)

14.     The Picture was released in domestic and/or foreign markets including, but not limited to, Supplemental Markets, including but not limited to free and pay television,

4

STATEMENT OF CLAIM AND DEMAND FOR ARBITRATION

1  DVD/home video, and New Media, and by virtue thereof, residuals are due and owing in
2  accordance with the CBA.

3      15.    Despite demand therefor, Respondents have failed to submit to SAG-AFTRA all
4  written reports showing gross receipts and pay residuals as required by the CBA with respect to
5  the exploitation of the Picture in domestic and/or foreign markets including, but not limited to,
6  Supplemental Markets and New Media.

7      16.    SAG-AFTRA demands, pursuant to the applicable SAG-AFTRA agreement(s),
8  that Respondents immediately submit the following to SAG-AFTRA:

9          A.    copies of all licensors' and distributors' statements showing gross
10              receipts derived from exploitation of the Picture;
11         B.    copies of all contracts in which the right to distribute the Picture on
12              New Media and in Supplemental Markets was assigned,
13              transferred, leased, licensed, or sold; and
14         C.    names, addresses, and telephone numbers of all persons and
15              entities who have within their possession or control licensors' and
16              distributors' statements, contracts, and any other books and records
17              relating to the exploitation of the Picture on New Media, or in
18              Supplemental Markets.
19  A failure to provide such documents shall be considered an additional breach of the CBA for
20  which SAG-AFTRA will seek further relief.

21                          **THIRD COUNT**
22                   **(Late Payment Liquidated Damages)**
23      17.    Section 31 of the CBA additionally provides that Respondents shall make
24  payment to Affected Performers within five (5) working days after completion of a day's work.
25  Late payment charges then accrue at the rate of ten dollars ($10.00) per day, per violation, up to
26  a maximum of twenty (20) days, excluding weekends and holidays.
27  //
28

18.     Further late pay liquidated damages in the amount of $2.50 (two dollars and fifty cents) per Affected Performer per day began to accrue on the date of written notice as a result of Respondent's failure to timely pay the amounts due in accordance with Section 31 of the CBA. These further late pay liquidated damages will continue to accrue, without limitation, until the delinquent payments, together with late payment charges, are fully paid.

19.     Respondents have failed to pay Affected Performers the additional initial compensation and residuals that are owed. Therefore, late pay liquidated damages are owed on those amounts in accordance with the CBA.

## FOURTH COUNT

### (Failure to Contribute to Pension and Health Plans)

20.     Section 34 of the CBA requires that Respondents contribute to the Producer-Screen Actors Guild Pension and Health Plans ("Plans") the appropriate percentage of all gross compensation paid to the Affected Performers, which includes monies paid for negotiated compensation and residuals.

21.     Producers breached the CBA by failing to make such contributions to the Plans with respect to the additional compensation that SAG-AFTRA seeks herein.

## FIFTH COUNT

### (Failure to Obtain Assumption Agreements)

22.     Respondents failed to obtain and deliver assumption agreements from Distributor, as required by the CBA, under which a distributor or buyer agrees to assume and make the residuals payments and pension and health plan contributions required by reason of the distribution of the Picture in domestic and/or foreign markets including, but not limited to, Supplemental Markets and New Media.

23.     Section 6 of the CBA provides: "The failure of Producer to obtain and deliver an executed assumption agreement, as provided in Sections 6(A) and 6(B) hereof, shall be deemed a substantial breach of this Agreement."

24.     This substantial breach entitles SAG-AFTRA to additional damages in an

amount to be ascertained and for other relief requested below.

**WHEREFORE**, SAG-AFTRA seeks the following:

1.    An accounting of gross receipts per the CBA for all exploitation of the Picture in domestic and/or foreign markets including, but not limited to Worldwide Free Television, Pay Television, New Media, and Supplemental Markets;

2.    An order requiring Respondents to send to SAG-AFTRA for transmittal a) checks comprising the total initial compensation, plus any appropriate adjustments to residuals, and late payment liquidated damages made payable to the order of the Affected Performers entitled to such payment, less all withholdings in accordance with the CBA, and b) a separate check made payable to the SAG-Producers Pension and Health Plans for all payments due to the plans under the CBA;

3.    An order granting SAG-AFTRA an irrevocable assignment of Respondents' accounts receivables from the worldwide exploitation, distribution, exhibition, or other use of the Picture until the amounts awarded herein are paid in full;

4.    A declaration and order that SAG-AFTRA is authorized to liquidate any security deposit, residuals reserve, or settlement account it may be holding with respect to the Picture and use the money to pay the Affected Performers on the Picture to whom any money may be owed;

5.    All costs and fees incurred by SAG-AFTRA in this arbitration; and

6.    Such other and further relief as the Arbitrator may deem proper.

Dated: June 10, 2020                    SCREEN ACTORS GUILD-AMERICAN FEDERATION OF
                                        TELEVISION AND RADIO ARTISTS

                                        By:_____

                                             SONJA AUGUSTINE
                                             Attorney for Claimant

1 | Sonja Augustine (SBN 155955)
2 | Counsel
| SAG-AFTRA
3 | 5757 Wilshire Boulevard, 7th Floor
| Los Angeles, California 90036-3600
4 | Telephone: (323) 634-8291
| Facsimile: (323) 549-6624
5 |
6 | Attorney for Claimant Screen Actors Guild-
| American Federation of Television and Radio
7 | Artists
8 |                        BEFORE THE SOLE NEUTRAL ARBITRATOR
9 |
10 | In the Matter of the Arbitration Between:        | Case No.: TM 14017
11 | SCREEN ACTORS GUILD-AMERICAN          | **PROOF OF SERVICE**
| FEDERATION OF TELEVISION AND RADIO
12 | ARTISTS, a non-profit corporation, as successor-
| in-interest to Screen Actors Guild, Inc., on behalf of
13 | Affected Performers, and 20 Doe Performers
14 |                        Claimant,
15 | v.
16 | UFO PICTURES LLC; SMCA 12 LLC,
| CINEDIGM ENTERTAINMENT CORP.;
17 | BONDIT LLC, and CHARACH PRODUCTIONS
| INC,
18 |
19 |                        Respondents.
20 | Re: *"Simple Man"* aka *"Beyond the Law"*
21 |
22 |        I, the undersigned, declare as follows:
23 |        I am, and was at the time of the service hereinafter mentioned, over the age of 18 years
24 | and not a party to the above-entitled cause. My business address is SAG-AFTRA 5757 Wilshire
25 | Boulevard, Los Angeles, California 90036, and I am employed in Los Angeles County,
26 | California.
27 |        On the date set forth below, I served the **Statement of Claim and Demand for**
28 | **Arbitration** on the parties in this action in the matter(s) stated below:

- 1 -

1.  One copy to be sent by certified mail, return receipt requested, and via email to the following addressee(s):

UFO Pictures LLC
c/o Micah E. Brandt
132 S. Adams St., Apt. 204
Glendale, CA 91205
Cinedigm Entertainment Corp.
Attn: Labor Relations
902 Broadway, 9th Floor
New York, NY 10010

BondIt LLC
1639 11th St., # 160
Santa Monica, CA 90404
info@bondit.us

BondIt LLC
c/o Matthew Helderman
Attn: Labor Relations
1639 11th St., # 250
Santa Monica, CA 90404

BondIt LLC
c/o Matthew Helderman
Attn: Labor Relations
130 Ocean Way
Santa Monica, CA 90402

UFO Pictures LLC
c/o Micah E. Brandt
6565 Americas Parkway NE, Suite 200 Albuquerque, NM 87110
ufopictures@gmail.com

SMCA 12 LLC
c/o Lauren Woodward
5751 Lemona Ave.
Sherman Oaks, CA 91411
ldenormandie@statusmedia-ent.com

SMCA 12 LLC
c/o Timothy Woodward Jr.
1438 N. Gower St., Bldg. 38, Ste. 201
Los Angeles, CA 90026
timothy@statusmedia-ent.com

Charach Productions Inc
c/o Capital Administrations LLC
Attn: Randy Charach
1712 Pioneer Ave., Ste. 500
Cheyanne, WY 82001

    I am readily familiar with the business's practice of collecting and processing correspondence for mailing with the United States Postal Service. Correspondence is deposited with the United States Postal Service that same day in which it is collected in the ordinary course of business, with postage thereon fully prepaid, following ordinary business practices.

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    Executed this 10th day of June, 2020 at Los Angeles, California.

Pentene Woolen

- 2 -

Proof of Service

800.538.4900
www.lasersub.com
LaserSub Files, Inc.™

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*

Certified Mail: 9214 7969 0099 9790 1633 9177 65

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $
☐ Return Receipt (electronic)      $ $2.85
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required          $
☐ Adult Signature Restricted Delivery $ $0.00
Postage

Total Postage and Fees
$6.900

Sent To
UFO Pictures LLC
c/o Micah E. Brandt
132 S. Adams St., Apt. 204
Glendale, CA 91205

PS Form 3800, April 2015    See Reverse for Instructions

CERTIFIED MAIL™

UFO Pictures LLC
c/o Micah E. Brandt
132 S. Adams St., Apt. 204
Glendale, CA 91205

9214 7969 0099 9790 1633 9177 65

Batch #:        9
Article #:      92147969009997901633917765
Date/Time:      6/10/2020  1:59:37PM

File: TM 14017 - Simple Man aka Beyond the Law
Internal File #:
Internal Code:

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

UFO Pictures LLC
c/o Micah E. Brandt
132 S. Adams St., Apt. 204
Glendale, CA 91205

6/10/2020  1:59:37PM

9290 9969 0099 9733 9177 72

2. Article Number *(Transfer from service label)*
9214 7969 0099 9790 1633 9177 65

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee
B. Received by *(Printed Name)*      C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES enter delivery address below:         ☐ No

3. Service Type
☐ Adult Signature                    ☐ Priority Mail Express®
☐ Adult Signature Restricted Delivery ☐ Registered Mail™
☐ Certified Mail®                    ☐ Registered Mail Restricted Delivery
☐ Certified Mail Restricted Delivery ☐ Return Receipt for Merchandise
☐ Collect on Delivery                ☐ Signature Confirmation™
☐ Collect on Delivery Restricted Delivery ☐ Signature Confirmation Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

PS Form 3811, July 2015 PSN 7530-02-000-9053    Domestic Return Receipt

Reorder Form LCD-811 rev. 05/15
1-800-538-4900
www.printcertifiedmail.com

① SEPARATE AT PERFORATION

② REMOVE LABEL AND RECEIPT FROM BACKING. PLACE LABEL AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS

---

UNITED STATES POSTAL SERVICE

File: TM 14017 - Simple Man aka Beyond the Law

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box •

Sonja Augustine
SAG AFTRA
5757 Wilshire Blvd
7th Floor
Los Angeles, CA 90036

9290 9969 0099 9733 9177 72

OPTIONAL LABEL

UFO Pictures LLC
c/o Micah E. Brandt
132 S. Adams St., Apt. 204
Glendale, CA 91205

③

LIFT HERE

800.538.4900
LaserSub.com
LaserSubGo, Inc.™
www.lasersub.com

## U.S. Postal Service™
## CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*

Certified Mail 9214 7969 0099 9790 1633 9178 19

| Extra Services & Fees *(check box, add fee as appropriate)* | |
|---|---|
| ☐ Return Receipt (hardcopy) | $ $3.45 |
| ☐ Return Receipt (electronic) | $ $2.85 |
| ☐ Certified Mail Restricted Delivery | $ |
| ☐ Adult Signature Required | $ $0.00 |
| ☐ Adult Signature Restricted Delivery | $ |

Postmark
Here

Postage $0.50

Total Postage and Fees $6.000

Sent To
UFO Pictures LLC
c/o Micah E. Brandt
6565 Americas Parkway NE, Suite 200
Albuquerque, NM 87110

Street, Apt. No.,
or PO Box No.
City, State, Zip+4
6/10/2020  2:00:23PM

PS Form 3800, April 2015    See Reverse for Instructions



CERTIFIED MAIL™

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

9214 7969 0099 9790 1633 9178 19

UFO Pictures LLC
c/o Micah E. Brandt
6565 Americas Parkway NE, Suite 200
Albuquerque, NM 87110

Batch #:      9
Article #:    92147969009997901633917819
Date/Time:    6/10/2020   2:00:23PM

File: TM 14017 - Simple Man aka Beyond the Law
Internal File #:
Internal Code:

---

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

Reorder Form LCD-811 rev. 05/15
1-800-538-4900
www.printcertifiedmail.com

1. Article Addressed to:

UFO Pictures LLC
**c/o Micah E. Brandt**
**6565 Americas Parkway NE, Suite 200**
**Albuquerque, NM 87110**

6/10/2020  2:00:23PM



9290 9969 0099 9733 9178 26

2. Article Number *(Transfer from service label)*
9214 7969 0099 9790 1633 9178 19

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent
                        ☐ Addressee

B. Received by *(Printed Name)*    C. Date of Delivery

D. Is delivery address different from Item 1?  ☐ Yes
   If YES enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053    **Domestic Return Receipt**

---



**UNITED STATES POSTAL SERVICE**

File: TM 14017 - Simple Man aka Beyond the Law

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box •

**Sonja Augustine**
**SAG AFTRA**
**5757 Wilshire Blvd**
**7th Floor**
**Los Angeles, CA 90036**

OPTIONAL LABEL

UFO Pictures LLC
c/o Micah E. Brandt
6565 Americas Parkway NE, Suite 200
Albuquerque, NM 87110



9290 9969 0099 9733 9178 26

① SEPARATE AT PERFORATION

② REMOVE LABEL AND RECEIPT FROM BACKING. PLACE LABEL AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS

③ ⟵ LIFT HERE

800.538.4900
www.lasersub.com
LaserSubstrates, Inc.™

## U.S. Postal Service™
## CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*

Certified Mail Fee  9214 7969 0099 9790 1633 9178 57

Extra Services & Fees (check box, add fee as appropriate)
- ☐ Return Receipt (hardcopy)        $ _____
- ☐ Return Receipt (electronic)      $ **$2.85**
- ☐ Certified Mail Restricted Delivery $ _____
- ☐ Adult Signature Required          $ _____
- ☐ Adult Signature Restricted Delivery $ **$0.00**

Postage  $ _____

Total Postage and Fees  **$6.900**

Sent To
Cinedigm Entertainment Corp.
Attn: Labor Relations
902 Broadway, 9th Floor
New York, NY 10010

Street, Apt. No., or PO Box No.
City, State, Zip+4

PS Form 3800, April 2015    See Reverse for Instructions



CERTIFIED MAIL™

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

9214 7969 0099 9790 1633 9178 57

Cinedigm Entertainment Corp.
Attn: Labor Relations
902 Broadway, 9th Floor
New York, NY 10010

Batch #:  9
Article #:  92147969009997901633917857
Date/Time:  6/10/2020  2:01:34PM

File: TM 14017 - Simple Man aka Beyond the Law
Internal File #:
Internal Code:

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Cinedigm Entertainment Corp.
Attn: Labor Relations
902 Broadway, 9th Floor
New York, NY 10010

6/10/2020  2:01:34PM



9290 9969 0099 9733 9178 64

2. Article Number (Transfer from service label)
9214 7969 0099 9790 1633 9178 57

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____    ☐ Agent
                          ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from Item 1?  ☐ Yes
   If YES enter delivery address below:        ☐ No

3. Service Type
- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☐ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Insured Mail
- ☐ Insured Mail Restricted Delivery (over $500)
- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☐ Return Receipt for Merchandise
- ☐ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053    **Domestic Return Receipt**

Reorder Form LCD-811 rev. 05/15
1-800-538-4900
www.printcertifiedmail.com

---

UNITED STATES POSTAL **SERVICE**

File: TM 14017 - Simple Man aka Beyond the Law

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

* Sender: **Please print** your name, address, and ZIP+4® in this box •

**Sonja Augustine**
**SAG AFTRA**
**5757 Wilshire Blvd**
**7th Floor**
**Los Angeles, CA 90036**



9290 9969 0099 9733 9178 64

OPTIONAL LABEL

Cinedigm Entertainment Corp.
Attn: Labor Relations
902 Broadway, 9th Floor
New York, NY 10010

① SEPARATE AT PERFORATION

② REMOVE LABEL AND RECEIPT FROM BACKING. PLACE LABEL AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS

③ LIFT HERE

800.538.4900
LaserSub Press, Inc.™
www.lasersub.com

## U.S. Postal Service™
## CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*

Certified Mail 9214 7969 0099 9790 1633 9178 88

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $
☐ Return Receipt (electronic)      $  $2.85
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery $  $0.00

Postage

Total Postage and Fees
$6.900

Sent To
SMCA 12 LLC
c/o Lauren Woodward
5751 Lemona Ave.
Sherman Oaks, CA 91411

Street, Apt. No.,
or PO Box No.
City, State, Zip+4

PS Form 3800, April 2015        See Reverse for Instructions



CERTIFIED MAIL™

9214 7969 0099 9790 1633 9178 88

SMCA 12 LLC
c/o Lauren Woodward
5751 Lemona Ave.
Sherman Oaks, CA 91411

Batch #:  3
Article #:  92147969009997901633917888
Date/Time:  6/10/2020  2:02:28PM

File: TM 14017 - Simple Man aka Beyond the Law
Internal File #:
Internal Code:

---

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

SMCA 12 LLC
c/o Lauren Woodward
5751 Lemona Ave.
Sherman Oaks, CA 91411

6/10/2020  2:02:28PM

9290 9969 0099 9733 9178 95

2. Article Number *(Transfer from service label)*
9214 7969 0099 9790 1633 9178 88

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by *(Printed Name)*      C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES enter delivery address below:         ☐ No

3. Service Type
☐ Adult Signature                    ☐ Priority Mail Express®
☐ Adult Signature Restricted Delivery ☐ Registered Mail™
☐ Certified Mail®                    ☐ Registered Mail Restricted Delivery
☐ Certified Mail Restricted Delivery ☐ Return Receipt for Merchandise
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery ☐ Signature Confirmation™
☐ Insured Mail                       ☐ Signature Confirmation Restricted Delivery
☐ Insured Mail Restricted Delivery
   (over $500)

PS Form 3811, July 2015 PSN 7530-02-000-9053        Domestic Return Receipt

Reorder Form LCD-811 rev. 05/15
1-800-538-4900
www.printcertifiedmail.com

① SEPARATE AT PERFORATION

② REMOVE LABEL AND RECEIPT FROM BACKING. PLACE LABEL AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS

---

UNITED STATES POSTAL SERVICE

File: TM 14017 - Simple Man aka Beyond the Law

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• **Sender:** Please print your name, address, and ZIP+4® in this box •

**Sonja Augustine
SAG AFTRA
5757 Wilshire Blvd
7th Floor
Los Angeles, CA 90036**



9290 9969 0099 9733 9178 95

OPTIONAL LABEL

SMCA 12 LLC
c/o Lauren Woodward
5751 Lemona Ave.
Sherman Oaks, CA 91411

③ ← LIFT HERE

1-800.538.4900
LaserSub.com, Inc.™
www.lasersub.com

## U.S. Postal Service™
## CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*

Certified Mail Fee  9214 7969 0099 9790 1633 9179 56

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)       $
☐ Return Receipt (electronic)     $
☐ Certified Mail Restricted Delivery $  $2.85
☐ Adult Signature Required        $
☐ Adult Signature Restricted Delivery $  $0.00

Postmark
Here

Postage
$0.980

Total Postage and Fees
$6.840

Sent To
Bondit LLC
Street, Apt. No.,
or PO Box No.     1639 11th St., # 160
City, State, Zip+4   Santa Monica, CA 90404

PS Form 3800, April 2015        See Reverse for Instructions

CERTIFIED MAIL™

9214 7969 0099 9790 1633 9179 56

Bondit LLC
1639 11th St., # 160
Santa Monica, CA 90404

Batch #:     9
Article #:   921479650009979016339179 56
Date/Time:   6/10/2020  2:05:06PM

File: TM 14017 - Simple Man aka Beyond the Law
Internal File #:
Internal Code:

① SEPARATE AT PERFORATION

② REMOVE LABEL AND RECEIPT FROM BACKING. PLACE LABEL AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS

---

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Bondit LLC
**1639 11th St., # 160**
**Santa Monica, CA 90404**

6/10/2020  2:05:06PM



2. Article Number *(Transfer from service label)*
9214 7969 0099 9790 1633 9179 5

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by *(Printed Name)*    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES enter delivery address below:         ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053        Domestic Return Receipt

Reorder Form LCD-811 rev. 05/15
www.printcertifiedmail.com
1-800-538-4900

---

UNITED STATES **POSTAL SERVICE**

File: TM 14017 - Simple Man aka Beyond the Law

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

* Sender: Please print your name, address, and ZIP+4® in this box *

**Sonja Augustine**
**SAG AFTRA**
**5757 Wilshire Blvd**
**7th Floor**
**Los Angeles, CA 90036**



OPTIONAL LABEL

Bondit LLC
1639 11th St., # 160
Santa Monica, CA 90404

③  ← LIFT HERE

1-800-538-4900
LaserSubstrates, Inc.™
www.lasersub.com

# U.S. Postal Service™
## CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*

Certified Mail Fee $5.60 9214 7969 0099 9790 1633 9180 14

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)        $ _____
☐ Return Receipt (electronic)       $ $2.85
☐ Certified Mail Restricted Delivery $ _____
☐ Adult Signature Required          $ _____
☐ Adult Signature Restricted Delivery $ $0.00

Postage   $0.500

Total Postage and Fees   $6.900

Postmark Here

Sent To
SMCA 12 LLC
c/o Timothy Woodward Jr.
1438 N. Gower St., Bldg. 38, Ste. 201
Los Angeles, CA 90026

6/10/2020  2:06:46PM

PS Form 3800, April 2015        See Reverse for Instructions



CERTIFIED MAIL™

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

9214 7969 0099 9790 1633 9180 14

SMCA 12 LLC
c/o Timothy Woodward Jr.
1438 N. Gower St., Bldg. 38, Ste. 201
Los Angeles, CA 90026

Batch #:
Article #: 92147969099979016339180014
Date/Time: 6/10/2020  2:06:46PM

File: TM 14017 - Simple Man aka Beyond the Law
Internal File #:
Internal Code:

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

SMCA 12 LLC
c/o Timothy Woodward Jr.
1438 N. Gower St., Bldg. 38, Ste. 201
Los Angeles, CA 90026

6/10/2020  2:06:46PM



9290 9969 0099 9733 9180 21

2. Article Number *(Transfer from service label)*
9214 7969 0099 9790 1633 9180 14

Reorder Form LCD-811 rev. 05/15
www.printcertifiedmail.com
1-800-538-4900

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____   ☐ Agent
                                ☐ Addressee

B. Received by *(Printed Name)*    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053        Domestic Return Receipt

---

SEPARATE AT PERFORATION

REMOVE LABEL AND RECEIPT FROM BACKING. PLACE LABEL AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS

---

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

File: TM 14017 - Simple Man aka Beyond the Law

* Sender: Please print your name, address, and ZIP+4® in this box •

Sonja Augustine
SAG AFTRA
5757 Wilshire Blvd
7th Floor
Los Angeles, CA 90036



9290 9969 0099 9733 9180 21

OPTIONAL LABEL

SMCA 12 LLC
c/o Timothy Woodward Jr.
1438 N. Gower St., Bldg. 38, Ste. 201
Los Angeles, CA 90026

LIFT HERE

1.800.538.4900
LaserSub.com
www.lasersub.com
LaserSubstrates, Inc.™

## U.S. Postal Service™
## CERTIFIED MAIL® RECEIPT
Domestic Mail Only

For delivery information, visit our website at *www.usps.com*®

Certified Mail 9214 7969 0099 9790 1633 9180 69

| Extra Services & Fees (check box, add fee as appropriate) | | |
|---|---|---|
| ☐ Return Receipt (hardcopy) | $ | |
| ☐ Return Receipt (electronic) | $2.85 | Postmark |
| ☐ Certified Mail Restricted Delivery | | Here |
| ☐ Adult Signature Required | | |
| ☐ Adult Signature Restricted Delivery | $0.00 | |

Postage $0.500

Total Postage and Fees
$6.900

Sent To
Bondlt LLC
Street, Apt. No., c/o Matthew Helderman
or PO Box No. Attn: Labor Relations
City, State, Zip+4 1639 11th St., #250
Santa Monica, CA 90404
6/10/2020 2:08:09PM

PS Form 3800, April 2015        See Reverse for Instructions

CERTIFIED MAIL™

Bondlt LLC
c/o Matthew Helderman
Attn: Labor Relations
1639 11th St., #250
Santa Monica, CA 90404

9214 7969 0099 9790 1633 9180 69

Batch #:       9
Article #:    9214796900999790163391806 9
Date/Time:   6/10/2020  2:08:09PM
File: TM 14017 - Simple Man aka Beyond the Law
Internal File #:
Internal Code:

① SEPARATE AT PERFORATION

② REMOVE LABEL AND RECEIPT FROM BACKING. PLACE LABEL AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS

---

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☐ Agent ☐ Addressee<br>B. Received by (*Printed Name*)    C. Date of Delivery |
| 1. Article Addressed to:<br>**Bondlt LLC**<br>**c/o Matthew Helderman**<br>**Attn: Labor Relations**<br>**1639 11th St., #250**<br>**Santa Monica, CA 90404**<br>6/10/2020  2:08:09PM | D. Is delivery address different from item 1? ☐ Yes<br>If YES enter delivery address below: ☐ No |



| 3. Service Type<br>☐ Adult Signature<br>☐ Adult Signature Restricted Delivery<br>☐ Certified Mail®<br>☐ Certified Mail Restricted Delivery<br>☐ Collect on Delivery<br>☐ Collect on Delivery Restricted Delivery<br>☐ Insured Mail<br>☐ Insured Mail Restricted Delivery (over $500) | ☐ Priority Mail Express®<br>☐ Registered Mail™<br>☐ Registered Mail Restricted Delivery<br>☐ Return Receipt for Merchandise<br>☐ Signature Confirmation™<br>☐ Signature Confirmation Restricted Delivery |

2. Article Number (*Transfer from service label*)
9214 7969 0099 9790 1633 9180 69

Reorder Form LCD-811 rev. 05/15
1-800-538-4900
www.printcertifiedmail.com

9290 9969 0099 9733 9180 76

PS Form 3811, July 2015 PSN 7530-02-000-9053        Domestic Return Receipt

---

UNITED STATES POSTAL SERVICE

File: TM 14017 - Simple Man aka Beyond the Law

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

* Sender: Please print your name, and address, and ZIP+4® in this box *

**Sonja Augustine**
**SAG AFTRA**
**5757 Wilshire Blvd**
**7th Floor**
**Los Angeles, CA 90036**



OPTIONAL LABEL

Bondlt LLC
c/o Matthew Helderman
Attn: Labor Relations
1639 11th St., #250
Santa Monica, CA 90404

③  ← LIFT HERE

1-800-538-4900
LaserSub Series, Inc.™
www.lasersub.com

## U.S. Postal Service™
## CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*

Certified Mail Fe  9214 7969 0099 9790 1633 9181 20

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)         $
☐ Return Receipt (electronic)       $   $2.85
☐ Certified Mail Restricted Delivery $                    Postmark
☐ Adult Signature Required          $                      Here
☐ Adult Signature Restricted Delivery $  $0.00
Postage

Total Postage and Fees
$6.900

Sent To
Charach Productions Inc
c/o Capital Administrations LLC
Attn: Randy Charach
1712 Pioneer Ave., Ste. 500
Cheyanne, WY 82001

PS Form 3800, April 2015          See Reverse for Instructions



CERTIFIED MAIL™

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

9214 7969 0099 9790 1633 9181 20

Charach Productions Inc
c/o Capital Administrations LLC
Attn: Randy Charach
1712 Pioneer Ave., Ste. 500
Cheyanne, WY 82001

Batch #:   9
Article #:  9214796909997901633918120
Date/Time:  6/10/2020  2:10:48PM
File: TM 14017 - Simple Man aka Beyond the Law
Internal File #:
Internal Code:

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Charach Productions Inc
c/o Capital Administrations LLC
Attn: Randy Charach
1712 Pioneer Ave., Ste. 500
Cheyanne, WY 82001
6/10/2020  2:10:48PM



9290 9969 0099 9733 9181 37

2. Article Number *(Transfer from service label)*
9214 7969 0099 9790 1633 9181 20

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by *(Printed Name)*       C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature                    ☐ Priority Mail Express®
☐ Adult Signature Restricted Delivery ☐ Registered Mail™
☐ Certified Mail®                    ☐ Registered Mail Restricted Delivery
☐ Certified Mail Restricted Delivery ☐ Return Receipt for Merchandise
☐ Collect on Delivery                ☐ Signature Confirmation™
☐ Collect on Delivery Restricted Delivery ☐ Signature Confirmation Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

PS Form 3811, July 2015 PSN 7530-02-000-9053          **Domestic Return Receipt**

Reorder Form LCD-811 rev. 05/15
1-800-538-4900
www.printcertifiedmail.com

---



① SEPARATE AT PERFORATION

② REMOVE LABEL AND RECEIPT FROM BACKING. PLACE LABEL AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS

---

**UNITED STATES POSTAL SERVICE**

File: TM 14017 - Simple Man aka Beyond the Law

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

* Sender: Please print your name, address, and ZIP+4® in this box •

Sonja Augustine
SAG AFTRA
5757 Wilshire Blvd
7th Floor
Los Angeles, CA 90036



9290 9969 0099 9733 9181 37

OPTIONAL LABEL

Charach Productions Inc
c/o Capital Administrations LLC
Attn: Randy Charach
1712 Pioneer Ave., Ste. 500
Cheyanne, WY 82001

③  ← LIFT HERE

1-800-538-4900
www.Lasersub.com
LaserSubstrates, Inc.™

# U.S. Postal Service™
## CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*

Certified Mail Fee  `7214 7969 0099 9790 1633 9181 51`

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)          $
☐ Return Receipt (electronic)        $   $2.85
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required           $
☐ Adult Signature Restricted Delivery $   $0.00

Postmark
Here

Postage   $0.500
Total Postage and Fees   $6.900

Sent To
Bondit LLC
c/o Matthew Helderman
Attn: Labor Relations
130 Ocean Way
Santa Monica, CA 90402
6/10/2020    2:12:08PM

PS Form 3800, April 2015          See Reverse for Instructions



CERTIFIED MAIL™

`7214 7969 0099 9790 1633 9181 51`

Bondit LLC
c/o Matthew Helderman
Attn: Labor Relations
130 Ocean Way
Santa Monica, CA 90402

Batch #:          9
Article #:        92147969009979016339181 51
Date/Time:        6/10/2020   2:12:08PM

File: TM 14017 – Simple Man aka Beyond the Law
Internal File #:
Internal Code:

---

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Bondit LLC
c/o Matthew Helderman
Attn: Labor Relations
130 Ocean Way
Santa Monica, CA 90402
6/10/2020    2:12:08PM


`9290 9969 0099 9733 9181 68`

2. Article Number *(Transfer from service label)*
`7214 7969 0099 9790 1633 9181 51`

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X _____   ☐ Agent
                                 ☐ Addressee

B. Received by *(Printed Name)*   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

PS Form 3811, July 2015 PSN 7530-02-000-9053

Reorder Form LCD-811 rev. 05/15
1-800-538-4900
www.printcertifiedmail.com

---

UNITED STATES POSTAL SERVICE



First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

File: TM 14017 – **Simple Man** aka Beyond the Law

• Sender: Please print your name, and address, and ZIP+4® in this box •

**Sonja Augustine**
**SAG AFTRA**
**5757 Wilshire Blvd**
**7th Floor**
**Los Angeles, CA 90036**


`9290 9969 0099 9733 9181 68`

OPTIONAL LABEL

Bondit LLC
c/o Matthew Helderman
Attn: Labor Relations
130 Ocean Way
Santa Monica, CA 90402


① SEPARATE AT PERFORATION

② REMOVE LABEL AND RECEIPT FROM BACKING. PLACE LABEL AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS

③  LIFT HERE

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS FOLD AT DOTTED LINE

Exhibit E



August 5, 2020

## VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED & EMAIL

UFO Pictures LLC
c/o Micah E. Brandt
132 S. Adam St., Apt. 204
Glendale, CA 91205
ufopictures@gmail.com

UFO Pictures LLC
c/o Micah E. Brandt
6565 Americas Parkway NE, Suite 200 Albuquerque,
NM 87110
ufopictures@gmail.com

**Re:    "Simple Man" aka "Beyond the Law"**
**SAG-AFTRA Case No. TM 14017**

Dear Parties:

Dear Interested Parties:

The above-referenced matter, subject to a Statement of Claim and Demand for Arbitration ("Demand") that was filed in the above-referenced matter on or about June 10, 2020, remains unresolved. If SAG-AFTRA does not receive a response within 15 days, it shall hereby exercise its right under the applicable collective bargaining agreement to unilaterally select an arbitrator and set the matter for arbitration.

**PLEASE TAKE NOTICE** that said arbitration of this dispute will take place at the following date, time, and place before **Arbitrator Michael D. Rappaport.**

**Date:**    November 18, 2020

**Time:**    10:00 a.m.

**Place:**    SAG-AFTRA
5757 Wilshire Blvd, 7th Floor
Los Angeles, CA 90036

Should you have any questions or concerns please do not hesitate to contact the undersigned.

Very truly yours,

Sonja Augustine
Counsel

Exhibit F

BEFORE THE PRODUCER-SCREEN ACTORS GUILD

SOLE NEUTRAL ARBITRATOR

| | |
|---|---|
| SCREEN ACTORS GUILD, INC.-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, a non-profit corporation, on behalf of Affected Performers, and 20 Doe Performers, <br><br> Claimant, <br><br> v. <br><br> UFO PICTURES LLC, <br><br> Respondent. <br><br> Re: *"Simple Man" aka "Beyond The Law"* | Case No.: TM 14017 <br><br> **[PROPOSED] ARBITRATION AWARD** |

## FINDINGS OF FACT

1.    Notice of the November 18, 2020, hearing was sent Via Certified U.S. Mail and Electronic Mail to UFO PICTURES LLC ("Producer" or "Respondent") on October 21, 2020.

2.    Pursuant to proper notice, this matter came to hearing before the undersigned Arbitrator on November 18, 2020, via SAG-AFTRA ZOOM hearing. Sonja Augustine appeared on behalf of claimant, SAG-AFTRA. Respondent did not attend the hearing, nor seek a continuance. The matter was considered fully submitted with respect to said Respondent at the close of the hearing.

3.    Respondent Producer is signatory to, or otherwise bound by, the 2017 Screen Actors Guild Codified Basic Agreement, as amended (the "CBA"), which includes the provisions related to arbitration of disputes between SAG-AFTRA and Producer (Section 9 of the CBA), via a SAG-AFTRA Agreement for Independent Producers of Theatrical Motion Pictures and a SAG-ATRA Agreement for Ultra Low Budget Theatrical Motion Pictures.

4.    During the term of the CBA, Producer produced a motion picture entitled *"Simple Man"*

1   *aka "Beyond The Law"* ("Picture").

2          5.       Producer employed various performers ("Performers") to render services in connection

3   with the Picture.

4          6.       Producer filmed parts of the Picture outside the United States in Romania, in violation of

5   the SAG-ATRA Agreement for Ultra Low Budget Theatrical Motion Pictures and the CBA.

6          7.       Producer has failed to pay the amounts due to Performers for their work on the Picture,

7   including initial compensation, late pay liquidated damages ("LPLDs"), and pension and health

8   contributions, as required by the CBA.

9          8.       SAG-AFTRA properly and timely submitted Statements of Claim and Requests for

10   Conciliation as well as Statements of Claim and Demands for Arbitration upon Producer for the amounts

11   due.

12 **AWARD**

13         After consideration of the evidence and arguments submitted, and based upon the foregoing

14   findings of fact, it is the Award of the undersigned Arbitrator that:

15          1.       UFO PICTURES LLC ("Producer") is in breach of the CBA.

16          2.       Producer is hereby ordered to pay SAG-AFTRA, on behalf of affected performers, the

17   compensation due to Performers appearing in the Picture, late payment liquidated damages ("LPLDs"),

18   pension and health contributions ("P&H"), and an estimate of employer side taxes and payroll house

19   expenses totaling **$163,665.67**, which consists of:

| | |
|---|---|
| Total Salary/LPLDs Due Performers: | $123,632.95 |
| P&H: | $17,840.61 |
| +Taxes/Expenses[1]: | $22,192.11 |
| **GRAND TOTAL:** | $163,665.67 |

24          3.       Producer is ordered to properly payroll the foregoing compensation and LPLDs and

25   deliver individual performer checks (less applicable withholding taxes) to SAG-AFTRA, Legal

26   Department, 5757 Wilshire Blvd., 7th Fl., Los Angeles, CA 90036, Attn.: Sonja Augustine.

27   ————————————————

28   [1] "Taxes/Expenses" represents a reasonable estimate of the employer-side taxes and payroll house expenses. Producer shall be liable for and shall pay all actual costs incurred in processing payment of the amounts owed hereunder.

2
ARBITRATION AWARD

4.      Producer is further ordered to deliver a check made payable to the "Screen Actors Guild – Producers Pension and Health Plans" for the foregoing P&H contributions to Screen Actors Guild – Producers Pension and Health Plans, P.O. Box 7830, Burbank, CA 91510-7830.

5.      SAG-AFTRA is authorized to release any funds held by SAG-AFTRA as a deposit so that such funds may be distributed in their entirety to Performers.

6.      Pursuant to the CBA, LPLDs shall continue to accrue, without limitation, until the delinquent payments, together with the LPLDs, are paid in full.

7.      Pursuant to the CBA, SAG-AFTRA is granted an irrevocable assignment of any monies received or to be received by Producer, including proceeds from the worldwide exploitation, distribution, exhibition, or other use of the Picture until the above sum(s) are paid in full.

8.      The parties are to split the fee of the undersigned Arbitrator evenly. SAG-AFTRA will advance Producer's portion of the Arbitrator's fee. However, Producer shall reimburse SAG-AFTRA for its pro-rata portion of the fee forthwith.

Dated: November 18, 2020

Michael D. Rappaport
Arbitrator

3
ARBITRATION AWARD

Exhibit G



**SAG·AFTRA.**

December 9, 2020

**VIA CERTIFIED MAIL & EMAIL**

UFO Pictures LLC
c/o Micah E. Brandt
132 S. Adam St., Apt. 204
Glendale, CA 91205
ufopictures@gmail.com

UFO Pictures LLC
c/o Micah E. Brandt
6565 Americas Parkway NE, Suite 200
Albuquerque, NM 87110
ufopictures@gmail.com

Re:    "Simple Man" aka "Beyond the Law"
       SAG-AFTRA Case No. TM 14017

Dear Interested Party:

Enclosed is an arbitration award against you and in favor of Screen Actors Guild-American Federation of Television and Radio Artists ("SAG-AFTRA") related to the motion picture entitled *"Simple Man" aka "Beyond the Law."* Among other relief, the award declares that you are in breach of the SAG-AFTRA Codified Basic Agreement, as modified, and grants damages to SAG-AFTRA in the amount of $163,665.67.

Please immediately contact SAG-AFTRA regarding payment of the amount awarded. SAG-AFTRA reserves all rights, claims, and causes of action related to this matter.

Very truly yours,

Sonja Augustine
Counsel

Enclosure

cc:

Cinedigm Entertainment Corp.
c/o Adam M. Mizel, CEO
902 Broadway, 9th Floor
New York, NY 10010

Cinedigm Entertainment Corp.
Attn: Michael V. Mancini
Rosenfeld, Meyer & Susman LLP
232 N. Canon Drive
Beverly Hills, CA 90210
mmancini@rslaw.com

SMCA 12 LLC
c/o Timothy Woodward Jr.
1438 N. Gower St., Bldg. 38, Ste. 201
Los Angeles, CA 90026
timothy@statusmedia-ent.com

Showtime Networks Inc.
c/o Kevin Young
1633 Broadway
New York, NY 10019
Kevin.Young@showtime.net

101 Films International Limited
c/o Andrew Lyon
2 John Street,
Clerkenwell, London, WC1N2ES
andy@101-films.com

SMCA 12 LLC
c/o Lauren Woodward
5751 Lemona Ave.
Sherman Oaks, CA 91411
ldenormandie@statusmedia-ent.com

BEFORE THE PRODUCER-SCREEN ACTORS GUILD

SOLE NEUTRAL ARBITRATOR

| | |
|---|---|
| SCREEN ACTORS GUILD, INC.-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, a non-profit corporation, on behalf of Affected Performers, and 20 Doe Performers, )<br><br>Claimant, )<br><br>v. )<br><br>UFO PICTURES LLC, )<br><br>Respondent. ) | Case No.: TM 14017<br><br>**[PROPOSED]**<br>**ARBITRATION AWARD** |

Re: *"Simple Man" aka "Beyond The Law"* )

## FINDINGS OF FACT

1.     Notice of the November 18, 2020, hearing was sent Via Certified U.S. Mail and Electronic Mail to UFO PICTURES LLC ("Producer" or "Respondent") on October 21, 2020.

2.     Pursuant to proper notice, this matter came to hearing before the undersigned Arbitrator on November 18, 2020, via SAG-AFTRA ZOOM hearing. Sonja Augustine appeared on behalf of claimant, SAG-AFTRA. Respondent did not attend the hearing, nor seek a continuance. The matter was considered fully submitted with respect to said Respondent at the close of the hearing.

3.     Respondent Producer is signatory to, or otherwise bound by, the 2017 Screen Actors Guild Codified Basic Agreement, as amended (the "CBA"), which includes the provisions related to arbitration of disputes between SAG-AFTRA and Producer (Section 9 of the CBA), via a SAG-AFTRA Agreement for Independent Producers of Theatrical Motion Pictures and a SAG-ATRA Agreement for Ultra Low Budget Theatrical Motion Pictures.

4.     During the term of the CBA, Producer produced a motion picture entitled *"Simple Man"*

1    *aka "Beyond The Law"* ("Picture").

2        5.        Producer employed various performers ("Performers") to render services in connection

3    with the Picture.

4        6.        Producer filmed parts of the Picture outside the United States in Romania, in violation of

5    the SAG-ATRA Agreement for Ultra Low Budget Theatrical Motion Pictures and the CBA.

6        7.        Producer has failed to pay the amounts due to Performers for their work on the Picture,

7    including initial compensation, late pay liquidated damages ("LPLDs"), and pension and health

8    contributions, as required by the CBA.

9        8.        SAG-AFTRA properly and timely submitted Statements of Claim and Requests for

10    Conciliation as well as Statements of Claim and Demands for Arbitration upon Producer for the amounts

11    due.

12                                    **AWARD**

13        After consideration of the evidence and arguments submitted, and based upon the foregoing

14    findings of fact, it is the Award of the undersigned Arbitrator that:

15        1.        UFO PICTURES LLC ("Producer") is in breach of the CBA.

16        2.        Producer is hereby ordered to pay SAG-AFTRA, on behalf of affected performers, the

17    compensation due to Performers appearing in the Picture, late payment liquidated damages ("LPLDs"),

18    pension and health contributions ("P&H"), and an estimate of employer side taxes and payroll house

19    expenses totaling **$163,665.67**, which consists of:

20        Total Salary/LPLDs Due Performers:                $123,632.95

21        P&H:                                               $17,840.61

22        +Taxes/Expenses[1]:                                $22,192.11

23        **GRAND TOTAL:**                                   **$163,665.67**

24        3.        Producer is ordered to properly payroll the foregoing compensation and LPLDs and

25    deliver individual performer checks (less applicable withholding taxes) to SAG-AFTRA, Legal

26    Department, 5757 Wilshire Blvd., 7th Fl., Los Angeles, CA 90036, Attn.: Sonja Augustine.

27    _____

28    [1] "Taxes/Expenses" represents a reasonable estimate of the employer-side taxes and payroll house expenses. Producer shall
      be liable for and shall pay all actual costs incurred in processing payment of the amounts owed hereunder.

1        4.      Producer is further ordered to deliver a check made payable to the "Screen Actors Guild
2   – Producers Pension and Health Plans" for the foregoing P&H contributions to Screen Actors Guild –
3   Producers Pension and Health Plans, P.O. Box 7830, Burbank, CA 91510-7830.

4        5.      SAG-AFTRA is authorized to release any funds held by SAG-AFTRA as a deposit so
5   that such funds may be distributed in their entirety to Performers.

6        6.      Pursuant to the CBA, LPLDs shall continue to accrue, without limitation, until the
7   delinquent payments, together with the LPLDs, are paid in full.

8        7.      Pursuant to the CBA, SAG-AFTRA is granted an irrevocable assignment of any monies
9   received or to be received by Producer, including proceeds from the worldwide exploitation,
10  distribution, exhibition, or other use of the Picture until the above sum(s) are paid in full.

11       8.      The parties are to split the fee of the undersigned Arbitrator evenly.  SAG-AFTRA will
12  advance Producer's portion of the Arbitrator's fee.  However, Producer shall reimburse SAG-AFTRA
13  for its pro-rata portion of the fee forthwith.

14
15  Dated: November 18, 2020

16                                              Michael D. Rappaport
17                                              Arbitrator
18
19
20
21
22
23
24
25
26
27
28

                              3

UFO Pictures LLC
c/o Micah E. Brandt
132 S. Adam St., Apt. 204
Glendale, CA 91205

Cinedigm Entertainment Corp.
c/o Adam M. Mizel, CEO
902 Broadway, 9th Floor
New York, NY 10010

Cinedigm Entertainment Corp.
Attn: Michael V. Mancini
Rosenfeld, Meyer & Susman LLP
232 N. Canon Drive
Beverly Hills, CA 90210

SMCA 12 LLC
c/o Timothy Woodward Jr.
1438 N. Gower St., Bldg. 38, Ste. 201
Los Angeles, CA 90026

UFO Pictures LLC
c/o Micah E. Brandt
6565 Americas Parkway NE, Suite 200
Albuquerque, NM 87110

Showtime Networks Inc.
c/o Kevin Young
1633 Broadway
New York, NY 10019

101 Films International Limited
c/o Andrew Lyon
2 John Street,
Clerkenwell, London, WC1N2ES

SMCA 12 LLC
c/o Lauren Woodward
5751 Lemona Ave.
Sherman Oaks, CA 91411





SAGAFTRA
Sonja Augustine
5757 WILSHIRE BLVD 7th Floor
LOS ANGELES, CA 90036

**USPS CERTIFIED MAIL**

9414 8149 0252 0052 0111 98

UFO Pictures LLC c/o Micah E. Brandt

132 S. Adam St
Apt 204
Glendale, CA 91205

Shipper Ref:      Simple Man
Reference 1:      Beyond the Law
Reference 2:      TM 14017

SAGAFTRA
Sonja Augustine
5757 WILSHIRE BLVD 7th Floor
LOS ANGELES, CA 90036

**USPS CERTIFIED MAIL**

9414 8149 0252 0052 0112 04

UFO Pictures LLC c/o Micah E. Brandt

6565 Americas Parkway NE
STE 200
Albuquerque, NM 87110

Shipper Ref:       Simple Man
Reference 1:       Beyond the Law
Reference 2:       TM 14017

# Exhibit H



October 1, 2024

## VIA CERTIFIED US MAIL & EMAIL

UFO Pictures, LLC
Attn: Micah E. Brandt
132 s. Adams St., Apt. 204
Glendale, CA 91205

UFO Pictures, LLC
Attn: Micah E. Brandt
6565 Americas Parkway NE, Ste. 200
Albuquerque, NM 87110
ufopictures@gmail.com

Re:    **Meet and Confer re: Confirmation Motion**
       **"Beyond the Law" aka "Simple Man" – Case No. TM 14017**

Dear Respondents:

In connection with the film, "Beyond the Law" aka "Simple Man", Screen Actors Guild – American Federation of Television and Radio Artists ("Union"), intends to file a motion against UFO Pictures, LLC  for an order confirming an arbitration award and for entry of judgment in conformity therewith.

The motion will be filed in the United States District Court, Central District of California, and we will provide you with notice of the motion. Pursuant to Local Rule 7-3, I wish to arrange a conference to discuss the motion as well as potential resolution of this matter. Monies are still outstanding in connection with the above film.

If the Union does not receive full and prompt payment, we will be forced to confirm the arbitration award as a judgment. Please contact me as soon as possible to discuss resolution of this matter.

Very truly yours,

Iris Bradstreet
Counsel

Enclosure

Iris Bradstreet, Counsel
Iris.Bradstreet@sagaftra.org • SAGAFTRA.org • Tel: 323.549.6084 Fax: 323.549.6624
SCREEN ACTORS GUILD - AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS
5757 Wilshire Blvd., 7th Floor, Los Angeles, CA 90036-3600
Associated Actors & Artistes of America / AFL-CIO